LUKE RECORDS, INC., a Florida corporation formerly known as Skyywalker Records, Inc., et al., Plaintiffs–Appellants,

v.

Nick NAVARRO, Sheriff, Broward County, Florida, Defendant–Appellee.

No. 90–5508.

United States Court of Appeals, Eleventh Circuit.

May 7, 1992.

Bruce Rogow, Ft. Lauderdale, Fla., Allen Jacobi, North Miami, Fla., for plaintiffs-appellants.

Daniel M. Waggoner, Seattle, Wash., for amicus Home Box Office.

John Jolly, Ft. Lauderdale, Fla., for defendant-appellee.

Kevin T. Baine, Williams & Connolly, Washington, D.C., for amicus Recording Industry Assoc. of America, Inc.

Steven F. Reich, Covington & Burling, Seth A. Tucker, Washington, D.C., Larry Corman, Hodgson, Russ, Andrews, Woods & Goodyear, Boca Raton, Fla., for amicus American Civil Liberties Union (ACLU).

Robert T. Perry, Brooklyn, N.Y., for amicus, pro se.

Charles B. Ruttenberg, John T. Mitchell, Washington, D.C., for Nat. Ass'n of Recording.

Before ANDERSON, Circuit Judge, RONEY and LIVELY *, Senior Circuit Judges.

PER CURIAM:

In this appeal, appellants Luke Records, Inc., Luther Campbell, Mark Ross, David Hobbs, and Charles Wongwon seek rever- sal of the district court's declaratory judgment that the musical recording "As Nasty As They Wanna Be" is obscene under Fla. Stat. § 847.011 and the United States Constitution, contending that the district court misapplied the test for determining obscenity. We reverse.

Appellants Luther Campbell, David Hobbs, Mark Ross, and Charles Wongwon comprise the musical group "2 Live Crew," which recorded "As Nasty As They Wanna Be." In response to actions taken by the Broward County, Florida Sheriff's Office to discourage record stores from selling "As Nasty As They Wanna Be," appellants filed this action in federal district court to enjoin the Sheriff from interfering further with the sale of the recording. The district court granted the injunction, finding that the actions of the Sheriff's office were an unconstitutional prior restraint on free speech. The Sheriff does not appeal this determination.

In addition to injunctive relief, however, appellants sought a declaratory judgment pursuant to 28 U.S.C.A. § 2201 that the recording was not obscene. The district court found that "As Nasty As They Wanna Be" is obscene under *Miller v. California*.[1]

This case is apparently the first time that a court of appeals has been asked to apply the *Miller* test to a musical composition, which contains both instrumental music and lyrics.[2] Although we tend to agree with appellants' contention that because music possesses inherent artistic value, no work of music alone may be declared obscene, that issue is not presented in this case. The Sheriff's contention that the work is not protected by the First Amendment is based on the lyrics, not the music. The Sheriff's brief denies any intention to put rap music to the test, but states "it is

---

* Honorable Pierce Lively, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

2. In a pre-*Miller* case, *United States v. Davis*, 353 F.2d 614 (2d Cir.1965), *cert. denied*, 384 U.S. 953, 86 S.Ct. 1567, 16 L.Ed.2d 549 (1966), that court affirmed the conviction of a defendant for mailing obscene materials, determining that two phonograph records and labels were obscene. Justice Stewart, dissenting from the denial of certiorari, stated that one of the records "consist[ed] almost entirely of the sounds of percussion instruments" and the other was a "transcription of passages from ... a book of poems." 384 U.S. at 953, 86 S.Ct. at 1567.

abundantly obvious that it is only the 'lyrical' content which makes "As Nasty As They Wanna Be" obscene." Assuming that music is not simply a sham attempt to protect obscene material, the *Miller* test should be applied to the lyrics and the music of "As Nasty As They Wanna Be" as a whole. The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. 413 U.S. at 24, 93 S.Ct. at 2615. This test is conjunctive. *Penthouse Intern., Ltd. v. McAuliffe,* 610 F.2d 1353, 1363 (5th Cir.1980). A work cannot be held obscene unless each element of the test has been evaluated independently and all three have been met. *Id.*

Appellants contend that because the central issue in this case is whether "As Nasty As They Wanna Be" meets the definition of obscenity contained in a Florida criminal statute, the thrust of this case is criminal and the Sheriff should be required to prove the work's obscenity beyond a reasonable doubt. In the alternative, appellants assert that at minimum, the importance of the First Amendment requires that the burden of proof in the district court should have been by "clear and convincing evidence," rather than by "a preponderance of the evidence." Assuming, arguendo, that the proper standard is the preponderance of the evidence, we conclude that the Sheriff has failed to carry his burden of proof that the material is obscene by the *Miller* standards under that less stringent standard. Thus, to reverse the declaratory judgment that the work is obscene, we need not decide which of the standards applies.

There are two problems with this case which make it unusually difficult to review. First, the Sheriff put in no evidence but the tape recording itself. The only evidence concerning the three-part *Miller* test was put in evidence by the plaintiffs. Second, the case was tried by a judge without a jury, and he relied on his own expertise as to the prurient interest community standard and artistic value prongs of the *Miller* test.

*First,* the Sheriff put in no evidence other than the cassette tape. He called no expert witnesses concerning contemporary community standards, prurient interest, or serious artistic value. His evidence was the tape recording itself.

The appellants called psychologist Mary Haber, music critics Gregory Baker, John Leland and Rhodes Scholar Carlton Long. Dr. Haber testified that the tape did not appeal to the average person's prurient interest.

Gregory Baker is a staff writer for *New Times Newspaper,* a weekly arts and news publication supported by advertising revenue and distributed free of charge throughout South Florida. Baker testified that he authored "hundreds" of articles about popular music over the previous six or seven years. After reviewing the origins of hip hop and rap music, Baker discussed the process through which rap music is created. He then outlined the ways in which 2 Live Crew had innovated past musical conventions within the genre and concluded that the music in "As Nasty As They Wanna Be" possesses serious musical value.

John Leland is a pop music critic for *Newsday* magazine, which has a daily circulation in New York, New York of approximately six hundred thousand copies, one of the top ten daily newspaper circulations in the country. Leland discussed in detail the evolution of hip hop and rap music, including the development of sampling technique by street disc jockeys over the previous fifteen years and the origins of rap in more established genres of music such as jazz, blues, and reggae. He emphasized that a Grammy Award for rap music was recently introduced, indicating that the recording industry recognizes rap as valid artistic achievement, and ultimately gave his expert opinion that 2 Live Crew's music in "As Nasty As They Wanna Be" does possess serious artistic value.

Of appellants' expert witnesses, Carlton Long testified most about the lyrics. Long is a Rhodes scholar with a Ph.D. in Political Science and was to begin an assistant professorship in that field at Columbia University in New York City shortly after the trial. Long testified that "As Nasty As They Wanna Be" contains three oral traditions, or musical conventions, known as call and response, doing the dozens, and boasting. Long testified that these oral traditions derive their roots from certain segments of Afro–American culture. Long described each of these conventions and cited examples of each one from "As Nasty As They Wanna Be." He concluded that the album reflects many aspects of the cultural heritage of poor, inner city blacks as well as the cultural experiences of 2 Live Crew. Long suggested that certain excerpts from "As Nasty As They Wanna Be" contained statements of political significance or exemplified numerous literary conventions, such as alliteration, allusion, metaphor, rhyme, and personification.

The Sheriff introduced no evidence to the contrary, except the tape.

*Second,* the case was tried by a judge without a jury, and he relied on his own expertise as to the community standard and artistic prongs of the *Miller* test.

The district court found that the relevant community was Broward, Dade, and Palm Beach Counties. He further stated:

This court finds that the relevant community standard reflects a *more* tolerant view of obscene speech than would other communities within the state. This finding of fact is based upon this court's personal knowledge of the community. The undersigned judge has resided in Broward County since 1958. As a practicing attorney, state prosecutor, state circuit judge, and currently, a federal district judge, the undersigned has traveled and worked in Dade, Broward, and Palm Beach. As a member of the community, he has personal knowledge of this area's demographics, culture, economics, and politics. He has attended public functions and events in all three counties and is aware of the community's concerns as reported in the media and by word of mouth.

In almost fourteen years as a state circuit judge, the undersigned gained personal knowledge of the nature of obscenity in the community while viewing dozens, if not hundreds of allegedly obscene films and other publications seized by law enforcement.

*     *     *     *     *

The plaintiffs' claim that this court cannot decide this case without expert testimony and the introduction of specific evidence on community standards is also without merit. The law does not require expert testimony in an obscenity case. The defendant introduced the *Nasty* recording into evidence. As noted by the Supreme Court in *Paris Adult Theatre I* [*v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973)], when the material in question is not directed to a 'bizarre, deviant group' not within the experience of the average person, the best evidence is the material, which 'can and does speak for itself.' *Paris Adult Theatre I,* 413 U.S. at 56 & n. 6, 93 S.Ct. at 2634 & n. 6.

In deciding this case, the court's decision is not based upon the undersigned judge's personal opinion as to the obscenity of the work, but is an application of the law to the facts based upon the trier of fact's personal knowledge of community standards. In other words, even if the undersigned judge would not find *As Nasty As They Wanna Be* obscene, he would be compelled to do so if the community's standards so required.[3]

It is difficult for an appellate court to review value judgments.[4] Although, generally, these determinations are made in

**3.** *Skyywalker Records, Inc. v. Navarro,* 739 F.Supp. 578, 589, 590 (S.D.Fla.1990).

**4.** *See Marks v. United States,* 430 U.S. 188, 198, 97 S.Ct. 990, 996, 51 L.Ed.2d 260 (1977) (Stevens, J., concurring in part and dissenting in part); *United States v. 2,200 Paper Back Books,* 565 F.2d 566, 570 & n. 7, 571 (9th Cir.1977); *United States v. Obscene Magazines, Film & Cards,* 541 F.2d 810, 811 (9th Cir.1976).

the first instance by a jury,[5] in this case the district judge served as the fact finder, which is permissible in civil cases.[6] Because a judge served as a fact finder, however, and relied only on his own expertise, the difficulty of appellate review is enhanced.[7] A fact finder, whether a judge or jury, is limited in discretion.[8] "Our standard of review must be faithful to both Rule 52(a) and the rule of independent review."[9] "The rule of independent review assigns to appellate judges a constitutional responsibility that cannot be delegated to the trier of fact," even where that fact finder is a judge.[10]

In this case, it can be conceded without deciding that the judge's familiarity with contemporary community standards is sufficient to carry the case as to the first two prongs of the *Miller* test: prurient interest applying community standards and patent offensiveness as defined by Florida law. The record is insufficient, however, for this Court to assume the fact finder's artistic or literary knowledge or skills to satisfy the last prong of the *Miller* analysis, which requires determination of whether a work "lacks serious artistic, scientific, literary or political value."[11]

In *Pope v. Illinois*,[12] the Court clarified that whether a work possesses serious value was not a question to be decided by contemporary community standards.[13] The Court reasoned that the fundamental principles of the First Amendment prevent the value of a work from being judged solely by the amount of acceptance it has won within a given community:

> Just as the ideas a work represents need not obtain majority approval to merit protection, neither, insofar as the First Amendment is concerned, does the value of the work vary from community to community based on the degree of local acceptance it has won.[14]

The Sheriff concedes that he has the burden of proof to show that the recording *is* obscene. Yet, he submitted no evidence to contradict the testimony that the work had artistic value. A work cannot be held ob-

5. *Cf. Miller*, 413 U.S. at 26–27, 93 S.Ct. at 2616.

6. *Penthouse*, 610 F.2d at 1363 (citing *e.g., Alexander v. Virginia*, 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed.2d 993 (1973)).

7. In *Penthouse Intern. Ltd. v. McAuliffe*, 610 F.2d 1353 (5th Cir.1980), the Court stated:

> We realize that Judge Freeman, as a member of the community of Fulton County, Georgia, is probably able to determine whether the average person, applying contemporary community standards would find that a work taken as a whole appeals to the prurient interest. But in this case, we must exercise our power of independent review and declare *that taken as a whole,* 'Penthouse' and 'Oui' appeal to the prurient interest....
>
> ....
>
> While we realize that Judge Freeman, as a member of the community, should possess insight as to what the average person of Fulton County, Georgia, applying contemporary community standards would find patently offensive, we must exercise our power of independent review. This is especially important because Judge Freeman may have not examined the question of 'describing sexual conduct.' We therefore conclude that the district court incorrectly determined that 'Penthouse' and 'Oui' do not include patently offensive depictions or descriptions of sexual conduct.

610 F.2d at 1364, 1366. *See also United States v. Various Articles of Obscene Merchandise*, 709 F.2d 132, 138 (2d Cir.1983) (Meskill, J. concurring in the result) ("On a prior appeal to this Court, a different panel of which I was a member, reversed [District] Judge Sweet's finding of non-obscenity because he had relied upon impermissible indicia of community standards.... Today, we affirm. In so doing, the majority accords uncommon deference to Judge Sweet's finding.... I am ill equipped to question Judge Sweet's assessment. Moreover, the government failed to introduce any evidence pertaining to *community standards to facilitate our review.* Had this case originated in the District of Connecticut, a community whose standards are familiar to me, I would not hesitate to reverse; but *it did not. I reluctantly concur.*").

8. *Penthouse*, 610 F.2d at 1363. *See Miller*, 413 U.S. at 25, 93 S.Ct. at 2615.

9. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499, 104 S.Ct. 1949, 1959, 80 L.Ed.2d 502, 515 (1983).

10. *Id.* 466 U.S. at 501, 104 S.Ct. at 1959.

11. *Miller*, 413 U.S. at 24, 93 S.Ct. at 2615.

12. 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987).

13. *Id.* 481 U.S. at 500–01, 107 S.Ct. at 1920–21.

14. *Id.* 481 U.S. at 500–01, 107 S.Ct. at 1921.

scene unless each element of the *Miller* test has been met. We reject the argument that simply by listening to this musical work, the judge could determine that it had no serious artistic value.

REVERSED.