TIPP-IT, INC., A NEBRASKA CORPORATION, APPELLANT, V.
MARTIN J. CONBOY, CITY PROSECUTOR, OMAHA,
DOUGLAS COUNTY, NEBRASKA, APPELLEE.

596 N.W. 2d 304

Filed July 9, 1999.   No. S-98-096.

Jeffrey A. Silver for appellant.

Alan M. Thelen, Assistant Omaha City Attorney, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## I. PROCEDURAL HISTORY

Tipp-It, Inc., a Nebraska corporation, and Terry Tippit, the operator of the "Run Bar" (jointly referred to as "Tipp-It"), brought a declaratory judgment action pursuant to Neb. Rev. Stat. § 28-820 (Reissue 1995), seeking a judgment that certain putative works of art, namely exhibits 1 through 3, were not obscene within the definition of obscenity contained in Neb. Rev. Stat. § 28-814 (Reissue 1995). Martin J. Conboy, the Omaha City Prosecutor, filed an answer and counterclaim generally denying Tipp-It's contentions and affirmatively alleging that the continued exhibition of the works constituted a public nuisance. After a bench trial, the Douglas County District Court declared exhibits 1 through 3 to be obscene. Tipp-It filed a notice of appeal and a petition to bypass. We granted Tipp-It's petition to bypass, see Neb. Rev. Stat. § 24-1106 (Reissue 1995), and now affirm.

## II. FACTUAL BACKGROUND

Tipp-It operated a bar located at 1713-15 Leavenworth Street, Omaha, Nebraska, under the name "Run Bar." Tipp-It has operated the Run Bar since August 24, 1994, catering solely to a gay

clientele. The Run Bar has a liquor license covering 1713-15 Leavenworth Street, including the main floor, a loft area, and a basement. The basement contains a full bar, chairs to sit on, and a pool table. The basement is utilized Thursday through Sunday by individuals over 21 years of age from 8 p.m. until 1 a.m. The primary activity of the Run Bar consists of socialization.

The works in question were displayed in the basement of the Run Bar. The matter in question came to light when local fire inspectors examined the basement of the Run Bar pursuant to Tipp-It's request for a certificate of occupancy. The fire inspectors complained to the Omaha Police Division regarding several works being displayed on the walls of the basement. On December 13, 1994, Sgt. Ronald Cole appeared at the Run Bar to investigate the complaint. Cole arrived at approximately 10 p.m., when the bar was open, and walked into the basement. Cole viewed various works displayed in the basement (22 total), seizing 3 works he suspected as violating the obscenity laws for the State of Nebraska (exhibits 1 through 3).

As a result of subsequent discussions between Conboy and Tipp-It's counsel, the parties determined that a declaratory judgment action would be initiated to ascertain whether the works were obscene. The works depicted in exhibits 1 through 3 were then returned to Tipp-It with the understanding that the works would not be displayed pending a resolution of this action.

Tipp-It filed a petition for declaratory judgment on March 9, 1995, and the case proceeded to trial on May 5, 1997. The Douglas County District Court described the works in question as follows:

(C) Exhibit 1 is a photograph of a drawing or sketch of eight, possibly nine men, all clearly adults. All are either naked or have exposed genitalia. Four of the men display penises which are erect and of exaggerated dimensions. One appears to have just completed anal intercourse with another man. Water or semen appears on the table or bench on which this man rests. In the lower right-hand corner a man appears to be undergoing anal penetration.

(D) Exhibit 2 is a photograph of a drawing or sketch of two men, both of whom are naked and have erect penises which are of exaggerated dimensions. The man who [is]

seated is performing fellatio on the man who is standing. Semen appears to be dripping from the mouth of the seated man. The standing man is wearing a Civil War-era cap. . . .

(E) Exhibit 3 is a photograph of a display which is itself either a photograph or painting. In it, a bearded man appears to be undergoing anal penetration by a standing man who has a "Mohawk" haircut.

The testimony adduced at trial was provided by Cole; Conboy; Tippit; and Dr. Roger Aikin, an expert witness. On December 29, 1997, the district court entered an order finding exhibits 1 through 3 obscene within the meaning of Neb. Rev. Stat. § 28-807(10) (Reissue 1995). The court ordered exhibits 1 through 3 to be surrendered to the Douglas County sheriff, destroyed, or removed from the state.

## III. ASSIGNMENT OF ERROR

Tipp-It's sole assignment of error is that the Douglas County District Court erred in finding exhibits 1 through 3 obscene within the meaning of § 28-807(10).

## IV. STANDARD OF REVIEW

The appropriate standard of review for obscenity cases was recently articulated in *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999).

In reviewing a fact finder's determination that certain material is obscene, the threshold duty of an appellate court is to conduct an independent review and determine, as a matter of constitutional law, if the material falls within the substantive limitations set forth in *Miller v. California*, 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973), i.e., is the material the type of "hardcore" sexual material that may be constitutionally regulated under the First Amendment. Thereafter, the appellate court must review the determinations of the trier of fact pursuant to the three-part obscenity standard set forth in *Miller v. California, supra*, and § 28-807(10). In so doing, the appellate court should give appropriate deference to the trier of fact regarding the first two prongs of the test, i.e., the "prurient interest" test and the "patently offensive" test, as these issues depend on knowledge of "contemporary community standards" which

are uniquely within the province of the trier of fact. *State v. Harrold, supra.*

In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *Hilliard v. Robertson*, 253 Neb. 232, 570 N.W.2d 180 (1997).

Finally, the appellate court should apply a de novo review in considering the third prong of the *Miller v. California* test, i.e., the "value" of the material at issue, since this determination does not depend upon community standards and is particularly amenable to appellate review. *State v. Harrold, supra.* In a de novo review, an appellate court reaches a conclusion independent of the trial court. *Eggers v. Rittscher*, 247 Neb. 648, 529 N.W.2d 741 (1995).

## V. ANALYSIS

### 1. Burden of Proof

Before proceeding with our analysis under *Miller v. California, supra*, we note that this court has never directly determined the appropriate burden of proof to be applied in civil obscenity cases brought pursuant to § 28-820. The district court determined the appropriate burden was proof beyond a reasonable doubt, stating that "given the issues of freedom of speech and freedom of expression at stake, and given that this proceeding arises under the criminal code, the defendant bears a burden of proving beyond a reasonable doubt that Exhibits 1 through 22, or any of them, are obscene." We agree.

Section 28-820 provides, in pertinent part,

Any person who exhibits . . . or is about to exhibit . . . or is about to acquire possession with intent to exhibit . . . any work, material, conduct or live performance shall, if such person has genuine doubt as to the question of whether such work, material, conduct or live performance is in fact within the terms and provisions of sections 28-807 to 28-829, have the right to bring an action in the district court for declaratory judgment under the Uniform Declaratory Judgments Act against the appropriate chief law enforcement officer of the city . . . in which the work,

material, conduct or live performance is located or is intended to be . . . exhibited, for a judicial determination as to whether or not such work, material, conduct or live performance is obscene.

Neither the text nor the legislative history of § 28-820 indicates the Legislature's intent regarding the appropriate burden of proof. See *Goolsby v. Anderson*, 250 Neb. 306, 549 N.W.2d 153 (1996). We must therefore construe § 28-820 in a fashion which avoids an absurd, unconscionable, or unjust result. See *State ex rel. Neb. Health Care Assn. v. Dept. of Health*, 255 Neb. 784, 587 N.W.2d 100 (1998).

■ Basic civil jurisprudence indicates that the burden of proof in declaratory judgment actions is a preponderance of the evidence and the burden is to be borne by the plaintiff. See, 2 Walter H. Anderson, Actions for Declaratory Judgments § 375 (2d ed. 1951); 22A Am. Jur. 2d *Declaratory Judgments* § 231 (1988 & Cum. Supp. 1999). At least one court has applied this standard in a civil obscenity case irrespective of the First Amendment issues involved.

In *Penthouse Intern., Ltd. v. Webb*, 594 F. Supp. 1186 (N.D. Ga. 1984), a magazine publisher brought a civil rights action against the county solicitor general seeking a declaratory judgment to enjoin enforcement of the state obscenity statute with respect to distribution of the magazine. The plaintiff argued that the materials were protected by a presumption of nonobscenity and that the presumption could be defeated only if the materials were found obscene beyond a reasonable doubt. The court rejected this claim and stated:

On its theory, all plaintiff would have to do in its affirmative action for a declaratory judgment is to show that there is a reasonable doubt that the issues are obscene. Plaintiff thus wants to have its cake and eat it too: it wants to force [the state] to prove [its] case as a defendant instead of as a prosecutor, by the criminal standard instead of by a preponderance of the evidence, in a federal civil action instead of a state criminal prosecution.

Plaintiff's suggestion is untenable. The Supreme Court has squarely held that the "beyond reasonable doubt" standard is not required in a civil proceeding concerning

obscenity. [*California*] *v. Mitchell Brothers' Santa Ana Theater*, 454 U.S. 90, 102 S.Ct. 172, 70 L.Ed.2d 262 (1981) (per curiam).

Nor does the state bear the burden of proof. The state has not come into this court; plaintiff has. Because [the plaintiff] seeks affirmative and anticipatory relief . . . [plaintiff] must accept the burden that is placed on every civil plaintiff. The Court therefore holds that, as the party seeking relief, plaintiff must carry the burden of proof and meet the usual, preponderance-of-the-evidence standard for civil litigation.

*Penthouse Intern., Ltd. v. Webb*, 594 F. Supp. at 1195-96.

Despite the suggestion in *Penthouse Intern., Ltd. v. Webb, supra*, that the Supreme Court has squarely ruled on this issue, the Court's holding in *California v. Mitchell Bros.' Santa Ana Theater*, 454 U.S. 90, 93, 102 S. Ct. 172, 70 L. Ed. 2d 262 (1981), stands for nothing more than the proposition that the federal Constitution does not require the beyond a reasonable doubt standard to be applied in civil cases and that "while a State may require proof beyond reasonable doubt in an obscenity case, that choice is solely a matter of state law."

■ Unlike the court in *Penthouse Intern., Ltd. v. Webb*, we believe the better reasoned approach is to require proof beyond a reasonable doubt. We suggested as much in *Main Street Movies v. Wellman*, 251 Neb. 367, 368, 557 N.W.2d 641, 643 (1997), a declaratory judgment action brought pursuant to § 28-820, in which we stated, "As the issue here is whether the movies in question are obscene . . . we review this matter as a *criminal case at law*." (Emphasis supplied.) We have long held that it is the prosecution's burden in a criminal case to produce proof beyond a reasonable doubt of every element of a charged offense. See, e.g., *State v. Jimenez*, 248 Neb. 255, 533 N.W.2d 913 (1995); *State v. Yelli*, 247 Neb. 785, 530 N.W.2d 250 (1995); *Peyton v. State*, 54 Neb. 188, 74 N.W. 597 (1898). We see no reason to treat civil obscenity cases differently.

In addition, imposing a burden of proof other than beyond a reasonable doubt would be inconsistent with the purpose of § 28-820. Section 28-820 was intended to provide plaintiffs with a mechanism to test the obscenity issue in a civil action prior to

any exposure to criminal prosecution. If the burden of proof was merely a preponderance of the evidence, a finding of obscenity would be of minimal assistance to the issue of whether the material in question is criminally obscene. If such were the case, plaintiffs could gain little by instituting an action under § 28-820. Thus, a plaintiff would be disinclined to institute a declaratory judgment action if he or she may not be able to use the proceeding to evaluate the potential for criminal prosecution.

The Supreme Court has acknowledged the value of this approach to solving the vexing problem of reconciling state efforts to suppress sexually oriented expression with the prohibitions of the First Amendment.

> Instead of requiring the bookseller to dread that the offer for sale of a book may, without prior warning, subject him to a criminal prosecution with the hazard of imprisonment, the civil procedure assures him that such consequences cannot follow unless he ignores a court order specifically directed to him for a prompt and carefully circumscribed determination of the issue of obscenity.

*Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 442, 77 S. Ct. 1325, 1 L. Ed. 2d 1469 (1957). "[S]uch a procedure provides an exhibitor or purveyor of materials the best possible notice, prior to any criminal indictments, as to whether the materials are unprotected by the First Amendment and subject to state regulation." *Paris Adult Theater I v. Slaton*, 413 U.S. 49, 55, 93 S. Ct. 2628, 37 L. Ed. 2d 446 (1973).

Moreover, we believe the hazards to First Amendment freedoms, inhering in the regulation of obscenity, require that even in civil cases, the State must comply with the more exacting standard of proof beyond a reasonable doubt. Given the potential for erroneous judgments and the fundamental interests at stake in First Amendment cases, the fact finder must be almost certain that the materials are not constitutionally protected. The best way to guard against such a threat is to impose the most stringent burden, i.e., proof beyond a reasonable doubt. As Justice Brennan stated in his concurrence in *McKinney v. Alabama*, 424 U.S. 669, 685, 96 S. Ct. 1189, 47 L. Ed. 2d 387 (1976):

The uncertainty of that line means that erroneous judgments as to whether material is obscene or not are likely in any event, and are particularly so if the factfinder is only marginally confident that the material falls on the unprotected side of the line. In light of the command of the First Amendment, a standard of proof by a mere preponderance of the evidence poses too substantial a danger that protected material will be erroneously suppressed. . . . [T]he possibility of an erroneous determination is heightened by the fact that the material may never be available to the public and thus need never have truly faced the acid test of acceptance under prevailing community standards. Furthermore, in light of the definition of obscenity—incorporating, as it does under current law, the notion of patent offensiveness to the average member of the community— there is an even greater need for the *judge* operating as sole factfinder to be convinced beyond a reasonable doubt that the material is obscene, for his determination is made without a jury's assessment of community values.

Equally as persuasive is the notion that the possible erroneous imposition of civil sanctions under the preponderance of the evidence standard simply creates too great a risk of self-censorship by those engaged in dissemination or display of materials pertaining to sex. Just as the improper allocation of the burden of proof "will create the danger that the legitimate utterance will be penalized" and may therefore cause persons to "steer far wider of the unlawful zone," *Speiser v. Randall*, 357 U.S. 513, 526, 78 S. Ct. 1332, 2 L. Ed. 2d 1460 (1958), the application of a preponderance of the evidence standard, rather than proof beyond a reasonable doubt, could cause affected persons to be overly careful about the material in which they deal. In this respect, Justice Brennan stated:

The inevitable tendency of the preponderance-of-the-evidence standard—by forcing persons dealing in marginal material to make hard judgments as to whether such material is obscene in order to avoid civil sanctions—would be to limit the volume of at least the marginal material a bookseller could permissibly handle, and thus "restrict the public's access to forms of the printed word which the

State could not constitutionally suppress directly." [Citation omitted.] This "self-censorship, compelled by the State, would be a censorship affecting the whole public, hardly less virulent for being privately administered." *McKinney v. Alabama*, 424 U.S. at 686 (Brennan, J., concurring).

◼ Having determined that proof beyond a reasonable doubt is the most appropriate standard in civil obscenity cases, instituted pursuant to § 28-820, we proceed in analyzing the works in question under *Miller v. California*, 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973).

### 2. OBSCENITY

#### (a) Threshold Determination

◼ The U.S. Supreme Court has indicated that both trial courts and appellate courts must make a threshold determination that the material in question is within the range of materials which may be regulated. *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999). That is, courts must initially determine, as a matter of constitutional law, whether the particular material is within the "substantive limitations" imposed by the First Amendment. *State v. Harrold, supra*. This review is intended " 'both to be sure that the [material] in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited.' " *Id.* at 842, 593 N.W.2d at 312 (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984)). Accordingly, if we conclude, as a result of our threshold determination, that a work or material is within the range of patently offensive "hardcore" sexual material defined in *Miller v. California, supra*, the three-prong *Miller* obscenity test must then be utilized to determine if the material is outside the ambit of First Amendment protection.

In *State v. Harrold*, 256 Neb. at 850, 593 N.W.2d at 316, we stated that sexual conduct exceeding customary limits of candor could be considered "patently offensive." In *Miller v. California*, 413 U.S. at 25, the Court gave examples of the type of "sexual conduct" that may be regulated by state law:

It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, *supra:*

(a) Patently offensive representations of descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

Subsequent to the Supreme Court's decision in *Miller v. California*, the Nebraska Legislature proscribed the "patently offensive" depiction of certain acts of "sexual conduct," including "acts of . . . homosexuality, sodomy, sexual intercourse, or prolonged physical contact with a person's clothed or unclothed genitals . . . ." § 28-807(15).

As described by the district court, and viewed by this court, exhibits 1 through 3 clearly depict conduct involving sexual acts "define[d] for regulation" by § 28-807(10). Exhibits 1 through 3 depict sexual acts of sodomy, anal intercourse, and prolonged physical contact with a person's unclothed genitals. See § 28-807(10). We determine that the sexual acts depicted in exhibits 1 through 3 are within the range of "hardcore" materials as described by *Miller v. California*. Exhibits 1 through 3 depict ultimate sex acts, lewd exhibition of genitalia, ejaculated seminal fluid, and anal intercourse. Such depictions are clearly within the confines of *Miller v. California*. As the Supreme Court determined in *Hamling v. United States*, 418 U.S. 87, 115, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974), photographs in a brochure depicting heterosexual and homosexual intercourse, sodomy, ejaculated seminal fluid, and other sexual acts constitute a "form of hard-core pornography well within the types of permissibly proscribed depictions described in *Miller*."

We therefore conclude, as a threshold matter, that exhibits 1 through 3 qualify "as possibly obscene." See *State v. Harrold, supra.* See, also, *U.S. v. Various Articles of Obscene Merchandise*, 709 F.2d 132 (2d Cir. 1983). Having determined that exhibits 1 through 3 meet this threshold requirement, we proceed with our analysis under *Miller v. California, supra.*

### (b) *Miller v. California* Obscenity Test

██ The Court in *Miller v. California*, 413 U.S. 15, 24, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973), defined obscenity as those materials which, "taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." Accord, *Smith v. United States*, 431 U.S. 291, 97 S. Ct. 1756, 52 L. Ed. 2d 324 (1977); *Jenkins v. Georgia*, 418 U.S. 153, 94 S. Ct. 2750, 41 L. Ed. 2d 642 (1974) (Brennan, J., concurring in result). Satisfying this definition involves a three-part conjunctive test. *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999).

First, a matter is not obscene under Nebraska law unless, taken as a whole, "an average person applying contemporary community standards would find that the work . . . predominantly appeals to the prurient interest or a shameful or morbid interest in nudity, sex, or excretion." § 28-807(10)(a). See, also, *Miller v. California, supra*. To decide this question of fact, the trier of fact must look to the work depicting sexual conduct as a whole to determine whether its dominant theme is one which goes substantially beyond customary limits of candor in appealing to a shameful or morbid interest in sex. See, *id.*; *Roth v. United States*, 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957).

Second, even though a matter depicts hardcore sexual conduct, which appeals to the prurient interest, it is not obscene unless, taken as a whole, the work "depicts or describes in a patently offensive way sexual conduct specifically set out in sections 28-807 to 28-829." § 28-807(10)(b). As discussed above, the Court in *Miller v. California* gave various examples of the type of sexual conduct that may be regulated by state law, and the Legislature took occasion to enumerate similar other acts of "sexual conduct" which may be classified as patently offensive. See § 28-807(15).

Third, even though the material appeals to the prurient interest and is patently offensive, it cannot be obscene, constitutionally, unless the work, as a whole, "lacks serious literary, artistic, political, or scientific value." § 28-807(10)(c). Accord *Miller v. California, supra*. Material dealing with sexual conduct in a

manner which advocates ideas, which contributes to or illustrates scientific discussion, or which adds to the general body of art and literature in our culture is protected by the 1st and 14th Amendments to the U.S. Constitution. See *Miller v. California, supra.* Therefore, appellate courts examine decisions on this third prong more closely in order to ensure that First Amendment protection of ideas, however unpopular, is maintained. See *Smith v. United States, supra.*

### (i) Prurient Interest and Patent Offensiveness

We now turn to the first two prongs of the three-part *Miller v. California* test and consider (1) whether the average person, applying contemporary community standards, would find exhibits 1 through 3 appealing to the prurient interest and (2) whether exhibits 1 through 3 depict, in a patently offensive way, sexual conduct specifically defined by the applicable state law.

The district court, sitting as the trier of fact, found exhibits 1 through 3 both appealing to the prurient interest and depicting sexual conduct in a patently offensive way. Based on the standard of review articulated in *State v. Harrold, supra,* we determine that the record amply supports the district court's findings regarding the first two prongs of the *Miller v. California* test.

As described by the district court, exhibit 1 is a sketch or drawing of eight or nine men who are either naked or have exposed genitalia. Four of the men display erect penises of exaggerated dimensions, and one appears to have just completed anal intercourse with another man. Exhibit 2 is a sketch or drawing of two naked men, both of whom have erect penises of exaggerated dimensions. A seated man is performing fellatio on a standing man, and semen appears to be dripping from the mouth of the seated man. Exhibit 3 is a photograph or painting of a bearded man who appears to be undergoing anal penetration by another man.

The district court concluded the pictures "clearly appeal to the prurient interest and the representations of the figures in Exhibits 1, 2 and 3 appear to have been designed to shock the viewer and, indeed, to be offensive." Based on our review of the record and affording the appropriate deference to the trier of fact, we cannot conclude the district court was clearly wrong.

See, *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 253 Neb. 813, 572 N.W.2d 362 (1998); *Hilliard v. Robertson*, 253 Neb. 232, 570 N.W.2d 180 (1997).

### (ii) Value of Works

We next turn to our de novo review of whether exhibits 1 through 3 lack serious literary, artistic, political, or scientific value. Tipp-It claims that the works in question, as "part of a large gay art collection that was displayed in San Francisco, California," including "pencil drawings, pastels, and self-portraits by well known gay artists," possess serious artistic value. Brief for appellant at 22. We disagree.

The district court determined exhibits 1 through 3 lacked any serious artistic value and stated:

> If there is anything that keeps these three exhibits from being obscene, it is that they might be said to have some serious artistic value. It is here that Dr. Aikin's unrefuted opinions become significant. The Court finds credible his opinion that Exhibits 1, 2 and 3 are artistically valueless. The Court thus finds that the defendant has borne its burden of proof as to Exhibits 1, 2 and 3, and that the same are obscene.

The only expert witness called to testify by either party was Dr. Aikin. Dr. Aikin received his bachelor of arts degree from the University of Oregon in 1969 and his doctorate degree from the University of California at Berkeley in 1977, both in art history. He has taught art at Creighton University for 18 years, served as the director of the Creighton Art Gallery for 6 years, and also served as a curator for the Creighton Art Gallery for 6 years. Dr. Aikin is currently the chairman of the Department of Fine and Performing Arts at Creighton University.

Dr. Aikin testified that whether a particular work has serious artistic value can be determined either under a subjective, "four-corners" test by evaluating such criteria as space, composition, design, color, harmony, and form and balance, or under an objective "Dickey" analysis, which considers where the art has been exhibited as well as whether the work, or the putative artist, has achieved a certain degree of respect and recognition in the artistic community. In Dr. Aikin's opinion, exhibits 1

through 3 do not possess any serious artistic value under either analysis.

Dr. Aikin initially analyzed exhibits 1 through 3 under the "four-corners" analysis, concluding that the works lacked "the kinds of things" or "any of the formal qualities" he deemed necessary to constitute serious artwork. When asked to evaluate the exhibits under the Dickey analysis, Dr. Aikin stated that in the absence of "any indication that these works have ever been part of a venue" or that "any serious value had accrued to th[em] as a result of an exhibition or a juried exhibition or a publication, or some kind of dispassionate, neutral judgment by the art world, I would have to say that th[ese] . . . have no value as art on that basis."

▇▇ Expert testimony is not necessary to enable the trier of fact to judge the obscenity of material which has been placed into evidence. See *Paris Adult Theater I v. Slaton*, 413 U.S. 49, 56, 93 S. Ct. 2628, 37 L. Ed. 2d 446 (1973) (stating that " '[i]n the cases in which this Court has decided obscenity cases since *Roth* [*v. United States*, 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957)], it has regarded the materials as sufficient in themselves for the determination of the question' "). However, in other cases, courts have considered expert testimony in guiding their decisions regarding serious artistic value. See, *Luke Records, Inc. v. Navarro*, 960 F.2d 134 (11th Cir. 1992); *United States v. Ten Erotic Paintings*, 432 F.2d 420 (4th Cir. 1970).

Consequently, while we are not bound to accept Dr. Aikin's expert testimony, we find his unrebutted, uncontroverted testimony of assistance in our de novo review. Dr. Aikin concluded that exhibits 1 through 3 have no serious artistic value, regardless of the analysis employed. Pursuant to our de novo review of the record, and viewing the works in their entirety, we reach the same conclusion and find beyond a reasonable doubt that exhibits 1 through 3 lack any serious artistic value.

## VI. CONCLUSION

Having considered Tipp-It's assignment of error and finding it lacking merit, we affirm the district court's December 29, 1997, order, finding exhibits 1 through 3 to be obscene.

AFFIRMED.

GERRARD, J., concurring.

I reluctantly concur in the result reached in the majority opinion. I write separately to articulate my views regarding the third prong of the test articulated in *Miller v. California*, 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973), i.e., the "value" of the material at issue. As this determination does not depend upon community standards and is particularly susceptible to appellate review, an appellate court considering this issue conducts a de novo review and reaches a conclusion independent of that of the trial court. See *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999).

An appellate court's de novo review of the value of the material at issue is appropriate because the appellate court is at least as qualified as the trier of fact to make such a determination. See *id.* While we may be as qualified as the trier of fact, we are not necessarily as qualified to determine the artistic value of a work as is an expert in the field of art, and we are often guided by testimony from such experts in our de novo review.

The trial court and the majority in this case rely upon the opinion of Dr. Roger Aikin, an acknowledged expert in the field of art. I find Aikin's testimony to be marginally persuasive regarding the "four-corners" analysis and not at all persuasive regarding his "Dickey" venue analysis. I do find Aikin's testimony, however, to be essentially uncontradicted, and his qualifications and the foundation for Aikin's opinion have not been challenged on appeal.

Because we are "in all respects confined to the record properly before us, limited to what was presented to the trial tribunal," see *Fremont Joint Stock Land Bank v. Harding*, 130 Neb. 842, 846, 266 N.W. 714, 716 (1936), I join in the judgment of the majority. Even though the appellate court conducts a de novo review, it is most helpful to have meaningful evidence in the record in order to conduct an insightful inquiry into the artistic value of the material at issue. It is not the proper role of an appellate court to become a "super expert," randomly imposing its opinion over those opinions properly admitted in evidence.

With that caveat, I must conclude, after a de novo review of the record before us, that the State met its burden of proving that

the material at issue lacked serious artistic value. Hence, I concur.

MILLER-LERMAN, J., concurring.
Given the applicable standard of review and the record with which we are presented, I must concur.