HONORABLE STEVE C. JONES, UNITED STATES DISTRICT JUDGE
This matter appears before the Court on Plaintiffs' Motion for Temporary Restraining Order/Preliminary Injunction (Doc. No. [2] ).
I. BACKGROUND
In their Motion, Plaintiffs state that they seek emergency relief to allow them to exercise their First Amendment rights in the public areas of Capitol Square property, which includes the State Capitol Building. Doc. No. [2-1], p. 1. Specifically, Plaintiffs wish to wear a pink button that states: "Don't Fuck With Us[,] Don't Fuck Without Us." Doc. No. [2-1], p. 2. The language in the button is also followed by *1351 a logo associated with the organization, Planned Parenthood. Plaintiffs state that: "[t]he first part of the message is intended to convey anger and urge lawmakers not to harm women by banning abortion. The second part of the message is a health advisory that, in a humorous but serious manner, reminds people not to have sexual intercourse without birth control or protection." Id.
In support of their motion, Plaintiffs included declarations in which they state that on March 7, 2019, they were wearing the above-described pink buttons in the public areas of the State Capitol Building and were told to remove the buttons by Capitol Police. Doc. Nos. [4], [5]. Plaintiffs state that they were not doing anything disruptive at the time that they were asked to remove the buttons. Id.
The State Capitol Police Officer Defendants (hereinafter "Defendants") filed a response brief on March 13, 2019. In their affidavits and supporting materials, Defendants assert that individuals wearing the pink buttons at issue were asked to remove them because the language on the buttons was considered "obscene, vulgar, or profane, was worn in the presence of minors, and was threatening an immediate breach of the peace as prohibited by O.C.G.A. § 16-11-39(a)(4)." Doc. No. [11-1], p. 4, ¶ 7.
The Court held a hearing on the motion on March 14, 2019. This matter is now ripe for review.
II. LEGAL STANDARD
The Court considers four factors when deciding whether to issue a preliminary injunction[1] pursuant to Federal Rule of Civil Procedure 65 : (1) whether there is a substantial likelihood of success on the merits; (2) whether the preliminary injunction is necessary to prevent irreparable injury; (3) whether the threatened injury outweighs the harm that the preliminary injunction would cause to the non-movant; and (4) whether the preliminary injunction would be adverse to the public interest. Parker v. State Bd. of Pardons and Paroles, 275 F.3d 1032, 1034-35 (11th Cir. 2001). Injunctive relief is an extraordinary and drastic remedy and should not be granted unless the movant clearly establishes the burden of persuasion as to each of these four factors. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000). In addition, "[a]t the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.' " Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (quoting Asseo v. Pan Am. Grain Co., 805 F.2d 23, 26 (1st Cir. 1986) ). The decision to grant preliminary injunctive relief is within the broad discretion of the district court. Majd-Pour v. Georgiana Cmty. Hosp., Inc., 724 F.2d 901 (11th Cir. 1984).
III. LEGAL ANALYSIS
A. Likelihood of Success on the Merits
As stated above, the first factor when determining whether to issue temporary or preliminary injunctive relief is whether the movant has a substantial likelihood of success on the merits. Parker, 275 F.3d at 1035.
*1352 In their Complaint, Plaintiffs assert that Defendants have violated their First Amendment rights by prohibiting them from wearing the pink buttons at issue in public areas of the State Capitol Building. Doc. No. [1], p. 7, ¶ 22.
"The First Amendment prohibits governments from abridging free speech," which includes expressive conduct. N.A.A.C.P. v. Hunt, 891 F.2d 1555, 1565 (11th Cir. 1990) ; see also R.A.V. v. City of St. Paul, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992).[2] In determining whether a state government official violated the First Amendment, "the initial inquiry is whether the speech or conduct affected by the government action comes within the ambit of the First Amendment." One World One Family Now v. City of Miami Beach, 175 F.3d 1282, 1285 (11th Cir. 1999).
Wearing a button with a political message is a form of expression within the protection of the First Amendment. See Minnesota Voters All. v. Mansky, --- U.S. ----, 138 S.Ct. 1876, 1885, 201 L.Ed.2d 201 (2018). However, "obscene material is unprotected by the First Amendment." Miller v. California, 413 U.S. 15, 23, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). " '[F]ighting words'-those that provoke immediate violence-are not protected by the First Amendment." N. A. A. C. P. v. Claiborne Hardware Co., 458 U.S. 886, 927, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982).
At the March 14, 2019 hearing, Defendants conceded that the words in the pink button at issue are not fighting words and this Court agrees.[3] The State does, however, continue to argue that the language in the button is obscene. The Court applies the Miller test, established by the United States Supreme Court to determine if speech is obscene. Under the Miller test, the Court must determine: "(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." Miller, 413 U.S. at 24, 93 S.Ct. 2607 (citations and quotations omitted).[4] "The Supreme Court has held ... that while the first two prongs of the Miller test are to be judged by the contemporary community standards, the third prong is to *1353 be objective-a 'reasonable person' standard." United States v. Jenkins, No. 1:06-CR-430-WSD, 2008 WL 11440547, at *6 (N.D. Ga. May 15, 2008), aff'd, 322 F. App'x 716 n.13 (11th Cir. 2009) (citing Pope v. Illinois, 481 U.S. 497, 500-01, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) ). "A work cannot be held obscene unless each element of the test has been evaluated independently and all three have been met." Luke Records, Inc. v. Navarro, 960 F.2d 134, 136 (11th Cir. 1992).
The Defendants' arguments focus on the latter part of the language in the pink button, i.e., "Don't Fuck Without Us," as language directly related to sexual activity and copulation. Plaintiffs agree that the language references sexual intercourse; however, Plaintiffs further assert that all three prongs of the Miller test are not met, as the button has "serious," "political," and "scientific" value in that it "conveys the scientific message that unprotected sex without birth control leads to sexually transmitted diseases and unwanted pregnancies." Doc. No. [2-1], p. 20.
After review, the Court finds that even in assuming that the first two Miller prongs are met, Plaintiffs have presented sufficient evidence to show that the third prong is not met, as a reasonable person could find that when the language in the button is taken as a whole (inclusive of consideration of the Planned Parenthood logo), that the button does not lack serious political and scientific value-to the extent that button is intended to convey a safe sex message. See Sable Commc'ns of California, Inc. v. F.C.C., 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989) ("Sexual expression which is indecent but not obscene is protected by the First Amendment.").
Next, the Court must consider the relevant forum and the accompanying level of scrutiny which the Court must apply in considering the regulations of speech within that forum. Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985).
Plaintiffs argue that [t]he public interiors of the State Capitol Building are a designated public forum." Doc. No. [2-1], p. 8; see Cornelius, 473 U.S. at 802, 105 S.Ct. 3439 ("a public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects."). At the hearing, Defendants conceded that the area is a public forum and that the restriction of requiring removal of the pink buttons at issue is a content-based restriction. See also Doc. No. [11], p. 6.
"Government restrictions on speech in a designated public forum are subject to the same strict scrutiny as restrictions in a traditional public forum." Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 469-70, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009). "Reasonable time, place, and manner restrictions are allowed, but any restriction based on the content of the speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest, and restrictions based on viewpoint are prohibited." Id. (citations omitted).
As stated above, Defendants concede that the speech restriction at issue is content-based. Accordingly, the Court must apply strict scrutiny and the Court must next determine if Defendants have shown that the restriction is narrowly tailored to serve a compelling government interest. Here, Defendants assert that the compelling government interest is protecting the well-being of the youth who visit the Capitol on a daily basis. Doc. No. [11], *1354 p. 7. The United States Supreme Court has "recognized that there is a compelling interest in protecting the physical and psychological well-being of minors [and] that [t]his interest extends to shielding minors from the influence of literature that is not obscene by adult standards." Sable, 492 U.S. 115 at 126, 109 S.Ct. 2829, 106 L.Ed.2d 93.
Despite this compelling government interest, Defendants have not shown that their restriction on speech is narrowly tailored, as requiring Plaintiffs to remove the buttons no matter where they are standing in the State Capitol constitutes a total restriction on the speech at issue. The Eleventh Circuit Court of Appeals has held that a total exclusion of a free speech expression from the Georgia State Capitol's designated public forum space is not narrowly drawn to achieve a compelling state interest. Chabad-Lubavitch of Georgia v. Miller, 5 F.3d 1383 (11th Cir. 1993). Accordingly, Plaintiffs have met their burden of establishing a substantial likelihood of success on the merits of the First Amendment claim.
B. Remaining Preliminary Injunction Factors
The Court now turns to the remaining preliminary injunction factors. To succeed under the second factor, Plaintiffs must show "a substantial likelihood of irreparable injury" if a preliminary injunction is not issued. Siegel, 234 F.3d at 1176. Generally, this means that a party cannot be made whole by monetary damages. See Odebrecht Constr., Inc. v. Sec'y, 715 F.3d 1268, 1289 (11th Cir. 2013). Here, the asserted injury is the suppression of speech. Doc. No. [2-1], p. 21. The Supreme Court has stated that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).
Next, to succeed under the third factor, the Court must consider whether the threatened injury to the movant outweighs the hardship that would be experienced by the opposing party if the preliminary injunction were issued. Parker, 275 F.3d at 1035. Defendants have not specifically set forth any type of hardship that will occur due to the preliminary injunction, but did express the State of Georgia's interest in the well-being of its youth. While, as stated above, the State has established its compelling interest as to the State's youth, the focus of this inquiry is hardship and the State has not sufficiently shown that it will be a hardship or otherwise difficult to comply with a preliminary injunction allowing the pink buttons at issue in the Capitol.
Finally, to succeed under the fourth factor, the Court must determine whether Plaintiffs' requested preliminary injunction would be adverse to public interest.[5] The Eleventh Circuit Court of Appeals has held that "the public interest is always served in promoting First Amendment values." Suntrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1276 (11th Cir. 2001). Accordingly, the Court finds that Plaintiffs have met their burden as to each of the four requirements for obtaining a Preliminary Injunction under Federal Rule of Civil Procedure 65.
Plaintiffs' Motion for Temporary Restraining Order/Preliminary Injunction (Doc. No. [2] ) is GRANTED . Accordingly, it is hereby ORDERED that, Defendants and all their respective officers, agents, servants, employees, attorneys, and persons acting in concert of participation with *1355 them are immediately enjoined from banning buttons that state, "Don't Fuck With Us[,] Don't Fuck Without Us," on the publicly accessible areas of Capitol Square property as defined by O.C.G.A. § 50-2-28(a) (over which the Capitol Police has jurisdiction, see O.C.G.A. § 35-2-122 ).
IT IS SO ORDERED this 14th day of March, 2019.

While Plaintiffs' motion is styled as a "Motion for a Temporary Restraining Order/Preliminary Injunction," because notice and opportunity to respond were provided to the State Capitol Police Defendants, the Court considers this matter solely as a request for preliminary injunction.

"This First Amendment right is protected from state infringement by the Fourteenth Amendment." Chabad-Lubavitch of Georgia v. Miller, 5 F.3d 1383, 1386 n.4 (11th Cir. 1993) (citing Everson v. Board of Educ., 330 U.S. 1, 8, 67 S.Ct. 504, 91 L.Ed. 711 (1947) ).

There is also no evidence that anyone was provoked to violence by seeing the buttons.

The Court recognizes Defendants' arguments concerning applying the Supreme Court's holding in Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) and modifying the Miller test; however, the Ginsberg case addressed the regulation of the distribution of sexually-related materials to minors and this case is not about distributing materials to minors-it concerns free speech in a public forum. Without more, the Court will apply the Miller test, as stated above. In addition, the Supreme Court has held that a state may serve the legitimate interest of shielding minors; but to withstand constitutional scrutiny, the state must narrowly draw "regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms. It is not enough to show that the Government's ends are compelling; the means must be carefully tailored to achieve those ends." Sable Commc'ns of California, Inc. v. F.C.C., 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989). As stated below, the narrowly drawn requirement has not been shown.

A security for costs/damages will not be required at this time. Fed. R. Civ. P. 65(c).