MAIN STREET MOVIES, INC., A NEBRASKA CORPORATION,
APPELLEE, AND TV CATS, INC., ET AL., INTERVENORS-APPELLEES,
V. MICHAEL WELLMAN, COUNTY ATTORNEY, SARPY COUNTY,
NEBRASKA, APPELLEE, AND STATE OF NEBRASKA EX REL.
DON STENBERG, ATTORNEY GENERAL, INTERVENOR-APPELLANT.

557 N.W.2d 641

Filed January 3, 1997.    No. S-94-988.

Don Stenberg, Attorney General, and James H. Spears for appellant.

Michael A. Kelley and Christopher D. Jerram, of Kelley & Lehan, P.C., and Richard J. Dinsmore for appellee Main Street Movies and intervenors-appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

This declaratory judgment action brought by the plaintiff-appellee, Main Street Movies, Inc., against the defendant-appellee, Michael Wellman, County Attorney of Sarpy County, Nebraska, seeks a determination as to whether certain so-called "adult" videotaped movies, explicitly depicting a variety of sexual acts, offered for sale and rental to the public are criminally obscene. The remaining appellees, TV Cats, Inc.; Vichaty, Inc.; and Movietime, Inc., intervened as plaintiffs, and the appellant, State of Nebraska ex rel. Don Stenberg, Attorney General, intervened as a defendant. Following a bench trial, the district court entered a judgment declaring that the six movies here at issue were not criminally obscene. In challenging that ruling before the Nebraska Court of Appeals, the State asserted, among other things, that the district court erred in its evidential rulings. We thereafter granted the State's petition to bypass the Court of Appeals and now reverse the district court's judgment and remand the matter for further proceedings.

An action for declaratory judgment is sui generis, and whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. See *Donaldson v. Farm Bureau Life Ins. Co.*, 232 Neb. 140, 440 N.W.2d 187 (1989). As the issue here is whether the movies in question are obscene in the sense that selling or making them available for rental would violate a criminal statute, we review this matter as a criminal case at law.

The plaintiffs collectively own seven stores in Sarpy County and allege that they are engaged in the sale and rental to the public of sexually explicit, videotaped movies. Neb. Rev. Stat. § 28-813 (Reissue 1995) makes it unlawful and a Class I misdemeanor for one to, among other things, possess "with intent to sell [or] rent . . . any obscene material . . . ." This action was brought under the provisions of Neb. Rev. Stat. § 28-820 (Reissue 1995), which, among other things, permits one having a "genuine doubt" as to the obscenity of material to bring a declaratory judgment action against the chief law enforcement officer of the area in which the material is sold or rented.

In the fall of 1991, the Attorney General's office sent letters to the Sarpy County video stores, stating that the Attorney

General had received a complaint about such stores distributing obscene material and that legal action would be brought against stores that continued to distribute such material. The Attorney General further encouraged Wellman to bring an action against various video stores in Sarpy County. While Wellman chose not to do so, the Attorney General was prepared to prosecute.

Neb. Rev. Stat. § 28-807(10) (Reissue 1995) provides:

Obscene shall mean (a) that an average person applying contemporary community standards would find that the work, material, conduct, or live performance taken as a whole predominantly appeals to the prurient interest or a shameful or morbid interest in nudity, sex, or excretion, (b) the work, material, conduct, or live performance depicts or describes in a patently offensive way sexual conduct specifically set out in sections 28-807 to 28-829, and (c) the work, conduct, material, or live performance taken as a whole lacks serious literary, artistic, political, or scientific value.

Neb. Rev. Stat. § 28-814(2) (Reissue 1995) declares that

the guidelines in determining whether a work, material, conduct, or live exhibition is obscene are: (a) The average person applying contemporary community standards would find the work taken as a whole goes substantially beyond contemporary limits of candor in description or presentation of such matters and predominantly appeals to the prurient, shameful, or morbid interest; (b) the work depicts in a patently offensive way sexual conduct specifically referred to in sections 28-807 to 28-829; (c) the work as a whole lacks serious literary, artistic, political, or scientific value; and (d) in applying these guidelines to the determination of whether or not the work, material, conduct or live exhibition is obscene, each element of each guideline must be established beyond a reasonable doubt.

Called as a witness by the plaintiffs, Wellman testified that he began working in the Sarpy County Attorney's office in 1975, was the chief deputy county attorney from 1977 until 1990, and has been the Sarpy County Attorney since April 1990. Although adult video movies have been available in Omaha since the late 1970's, between 1978 and 1990 the Sarpy County Attorney's

office received only one complaint, which came from an Iowa resident.

Around 1990, Wellman actively sought the views of Sarpy County residents concerning the sale and rental of adult videos and related matters. He talked with people he met and asked them their views regarding the possible prosecution of video stores which sell and rent adult videos, and discussed this issue with people who called his office on other matters. On the basis of those conversations, Wellman testified over objection that a fairly substantial majority of people in Sarpy County believes that the government should not be "sticking its nose" into people's living rooms and that the residents of Sarpy County are opposed to material depicting sexual violence and sex with children, do not want adult material available to children, do not want adult-only bookstores and theaters or other adult-only places, but do not mind if video stores sell or rent adult material as a side business.

Among other claims of evidential error, the State asserts that the district court wrongly received and relied upon Wellman's opinion as to the relevant contemporary community standard. While a jury may ascertain the sense of the average person, applying contemporary community standards without the benefit of expert evidence, *Smith v. United States*, 431 U.S. 291, 97 S. Ct. 1756, 52 L. Ed. 2d 324 (1977), and *Hamling v. United States*, 418 U.S. 87, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974), we have held that a defendant in a criminal obscenity case nonetheless has a right to introduce evidence pertaining to the community standard, *State v. Little Art Corp.*, 189 Neb. 681, 204 N.W.2d 574 (1973), *vacated on other grounds* 414 U.S. 992, 94 S. Ct. 345, 38 L. Ed. 2d 231.

Where the statutes embodying the rules of evidence apply, the admission of evidence is controlled by rule and not by judicial discretion, except where judicial discretion is a factor involved in assessing admissibility. *State v. Lee*, 247 Neb. 83, 525 N.W.2d 179 (1994). Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1995), provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact . . . to determine a fact in issue, a witness qualified as an expert

by knowledge, skill, experience, training, or education, may tes-tify thereto in the form of an opinion or otherwise."

There is no exact standard for determining when one qualifies as an expert, and a trial court's factual finding that a witness qualifies as an expert will be upheld on appeal unless clearly erroneous. *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991); *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990). Cf. *Palmer v. Forney*, 230 Neb. 1, 429 N.W.2d 712 (1988) (trial judge's ruling regarding admissibility of expert testimony will not be reversed absent abuse of discretion). However, whether one qualifies as an expert depends on the factual basis or reality underlying the witness' title or claim to expertise. See *Reynolds, supra.*

Under the circumstances, Wellman's testimony does nothing more than explain how he determined in his own mind not to prosecute and constitutes nothing more than an expression of his individual sense of the contemporary community standard. Wellman's knowledge, skill, experience, training, and education as a prosecutor do not qualify him as an expert in determining public opinion. See, *State v. Lopez*, 249 Neb. 634, 544 N.W.2d 845 (1996) (not error to exclude testimony of witness not shown to be expert in crime scene reconstruction); *State v. Borchardt*, 224 Neb. 47, 395 N.W.2d 551 (1986) (error to admit result of test not shown to demonstrate that which test is claimed to demonstrate). It was therefore clearly erroneous for the district court to have received Wellman's opinion as to the contemporary community standard.

The erroneous admission of evidence in a bench trial of a law action, including a criminal case, is not reversible error if other relevant evidence, admitted without objection or properly admitted over objection, sustains the trial court's necessary factual findings; in such case, reversal is warranted if the record shows that the trial court actually made a factual determination, or otherwise resolved a factual issue or question, through the use of erroneously admitted evidence. *State v. Chambers*, 241 Neb. 66, 486 N.W.2d 481 (1992). Here, the district court expressly noted that Wellman's testimony "provided significant insight as to the [contemporary community] standard and [the district court finds] his testimony has substantial probative

value." We can only conclude therefrom that the district court resolved the factual issue of what constitutes the contemporary community standard in at least partial reliance on Wellman's testimony.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.