MAIN STREET MOVIES, INC., A NEBRASKA CORPORATION,
APPELLEE, AND TV CATS, INC., ET AL.,
INTERVENORS-APPELLEES, v. MICHAEL WELLMAN, COUNTY
ATTORNEY, SARPY COUNTY, NEBRASKA, APPELLEE,
AND STATE OF NEBRASKA EX REL. DON STENBERG,
ATTORNEY GENERAL, INTERVENOR-APPELLANT.

598 N.W. 2d 754

Filed August 27, 1999.    No. S-98-102.

Don Stenberg, Attorney General, and William L. Howland for appellant.

Michael A. Kelley and Christopher D. Jerram, of Kelley, Lehan & Hall, P.C., and Richard J. Dinsmore for appellee Main Street Movies and intervenors-appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Main Street Movies, Inc. (Main Street), brought this action for declaratory judgment pursuant to Neb. Rev. Stat. § 28-801 et seq. (Reissue 1995), specifically § 28-820, against Michael Wellman, Sarpy County Attorney. Main Street sought a determination whether certain videotape movies explicitly depicting a variety of sexual acts, which movies Main Street offered for rental and sale to the public, were criminally obscene.

## SCOPE OF REVIEW

■ An action for declaratory judgment is sui generis, and whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. *Main Street Movies v. Wellman*, 251 Neb. 367, 557 N.W.2d 641 (1997) (*Main Street I*).

■ When the issue presented is whether an item in question is obscene in the sense that selling or making it available for

rental would violate a criminal statute, we review such matter as a criminal case at law. *Id.*

## FACTS

Main Street is a business located in Sarpy County and engaged in the rental and sale of videotape movies. A portion of Main Street's inventory is sexually explicit and has been available for rental and sale at Main Street for approximately 15 years. The sexually explicit movies are segregated from other movies in the store so that only adults have access to them. If a movie's case depicts sexually explicit material, Main Street removes the movie from its case. Main Street contends that it has attempted to not rent movies which portray violence to women or which involve sexual activity with children.

There were few complaints with regard to the operation of Main Street's business until the spring of 1990. At that time, a group named "Omahans for Decency" began to complain to the Sarpy County Attorney about the rental and sale of these sexually explicit movies. The county attorney, however, declined to prosecute Main Street.

In the fall of 1991, Omahans for Decency contacted the office of the Nebraska Attorney General. In October 1991, the Attorney General's office sent a letter to Main Street, directing it to cease the sale and rental of all sexually explicit movies which were obscene. Main Street responded to the Attorney General and then filed a declaratory judgment action against the Sarpy County Attorney pursuant to § 28-820, seeking a determination of whether the sexually explicit movies which it offered for rental and sale were obscene.

The State of Nebraska ex rel. Don Stenberg, Attorney General, intervened as a defendant. Subsequently, the district court determined that the State had an interest in the outcome of the litigation and sustained its petition for intervention. TV Cats, Inc.; Vichaty, Inc.; and Movietime, Inc., were permitted to intervene as plaintiffs.

Following a bench trial, the district court entered a judgment declaring that some of the movies at issue were not criminally obscene. The State challenged that ruling and appealed to the Nebraska Court of Appeals. We granted the State's petition to

bypass, reversed the district court's judgment, and remanded the matter for further proceedings. See *Main Street I.*

In *Main Street I*, the Sarpy County Attorney was called as an expert witness by the plaintiffs. Over objection, the county attorney said that he had actively sought the views of Sarpy County residents concerning the rental and sale of adult movies and related matters and that the residents of Sarpy County were opposed to material depicting sexual violence and sex with children, did not want adult material available to children, did not want adult-only bookstores and theaters or other adult-only places, but did not mind if video stores sold or rented adult material as a side business. We concluded that the admission of this testimony was prejudicial error, since the county attorney did not qualify as an expert. We stated that this testimony should not have been taken as an expression of the contemporary community standard, but, instead, as merely an account of how the county attorney reached the conclusion not to prosecute those businesses selling and renting adult movies in the county. We therefore reversed the judgment and remanded the cause for further proceedings.

On remand, the evidence adduced at the first trial was reoffered and received, arguments were held, and the matter was submitted. After reviewing the movies, the district court found that exhibit 9, a movie entitled "Takin' It to the Jury," clearly had serious literary or artistic value. Exhibit 46, a movie entitled "Deep Throat III," was also found to have "serious value." As to the remainder of the videos, the court stated:

> I conclude the evidence in this case establishes beyond a reasonable doubt that Exhibits #14 and #44 are obscene material. I conclude that the evidence fails to show, beyond a reasonable doubt, that Exhibits #6, #7, #8, #9, #11, #12, #13, #15, #16, #17, #34, #35, #36, #37, and #46 are obscene.

## ASSIGNMENTS OF ERROR

On appeal, the State assigns as error that the district court erred (1) in finding that the State had the burden of proving beyond a reasonable doubt that the movies were obscene, (2) in failing to find certain movies identified by the State to be

obscene, and (3) in its ruling and opinion concerning testimony offered by the State.

## ANALYSIS

Section 28-820 provides:

> Any person who exhibits, sells or distributes, or is about to exhibit, sell or distribute . . . any work, material, conduct or live performance shall, if such person has genuine doubt as to the question of whether such work, material, conduct or live performance is in fact within the terms and provisions of sections 28-807 to 28-829, have the right to bring an action in the district court for declaratory judgment under the Uniform Declaratory Judgments Act . . . for a judicial determination as to whether or not such work, material, conduct or live performance is obscene.

The State asserts the district court erred in finding that the State had the burden of proving beyond a reasonable doubt that the movies are obscene. Since we review this matter as a criminal case at law, see *Main Street I*, the State is required to prove beyond a reasonable doubt that the material is obscene, see *Tipp-It, Inc. v. Conboy, ante* p. 219, 596 N.W.2d 304 (1999).

In addition, § 28-820 allows a declaratory judgment action to be consolidated with a pending action brought pursuant to §§ 28-816 to 28-818. Prosecutions based upon obscene literature or material are criminal in nature and require the State to prove beyond a reasonable doubt that the literature or material is obscene. It would be totally inconsistent with the provisions of the criminal code if the standard of proof in § 28-820 was less than the standard of proof for criminal prosecutions regarding obscenity. Thus, the State bears the burden of proving beyond a reasonable doubt all three elements of obscenity, and we find that this assignment of error is without merit.

We next proceed to a determination of whether the material is obscene. The State argues that the district court erred by failing to find certain movies identified by the State to be obscene. Obscenity is not within the area of constitutionally protected speech, and therefore, obscene material may be prohibited or otherwise regulated without offending the First Amendment to the U.S. Constitution. *State v. Harrold*, 256 Neb.

829, 593 N.W.2d 299 (1999), relying on *Roth v. United States*, 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957).

■ The Legislature has defined the term "obscene" in § 28-807(10) as follows:

> Obscene shall mean (a) that an average person applying contemporary community standards would find that the work, material, conduct, or live performance taken as a whole predominantly appeals to the prurient interest or a shameful or morbid interest in nudity, sex, or excretion, (b) the work, material, conduct, or live performance depicts or describes in a patently offensive way sexual conduct specifically set out in sections 28-807 to 28-829, and (c) the work, conduct, material, or live performance taken as a whole lacks serious literary, artistic, political, or scientific value.

This definition is coextensive with the First Amendment standard established in *Miller v. California*, 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973). See, also, *State v. Harrold, supra.*

■ Statutes designed to regulate materials must be carefully limited. *Miller v. California, supra.* The permissible scope of such regulation is confined to work, material, conduct, or live performances which depict or describe in a patently offensive way sexual conduct as specifically set out in §§ 28-807 to 28-829. The Legislature has defined the sexual conduct that may be regulated in § 28-807(15) as "acts of masturbation, homosexuality, sodomy, sexual intercourse, or prolonged physical contact with a person's clothed or unclothed genitals, pubic area, or buttocks or, if such person is female, breast."

We first independently review the material to determine whether the material in question depicts or describes patently offensive sexual conduct that may be regulated. The Court in *Miller* gave two plain examples of what a state statute could define for regulation: (1) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, and (2) patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals. Therefore, our initial inquiry is not whether the material is obscene, but whether the material depicts or describes patently offensive sexual conduct that may

be regulated as set forth in *Miller*. If the material does not, then as a matter of law the material cannot be found to be obscene.

For purposes of our analysis, we designate this independent review "part A." Part A of the independent review conducted by an appellate court in First Amendment cases is intended " 'both to be sure that the speech in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited.' " *Harrold*, 256 Neb. at 842, 593 N.W.2d at 312, quoting *Bose Corp. v. Consumers Union of U. S., Inc.*, 466 U.S. 485, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984).

In part A of the review, our initial focus is on the substantive content of the material. If we determine as a matter of law that the material depicts or describes patently offensive types of sexual conduct that may be regulated, see *Miller v. California, supra*, then we proceed with what we designate "part B" of our analysis. Part B is concerned with whether, as a matter of fact, the material taken as a whole predominantly appeals to the prurient interest or a shameful or morbid interest in nudity, sex, or excretion, part B(1); is patently offensive, part B(2); and lacks serious literary, artistic, political, or scientific value, part B(3), as set forth in § 28-807(10). Part B adopts the three-prong framework announced in *Miller v. California, supra.*

Part B(1) and (2) incorporates contemporary community standards. In *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999), we stated that the trier of fact is obviously better suited to determine the limits of tolerance in a particular community regarding the prurient interest test and the patently offensive test and that a reviewing court should give due deference to the findings of the trier of fact regarding these essentially factual determinations. Thus, in our review of part B(1) and (2), for the purpose of declaratory judgment, we substitute our findings for those of the trier of fact only if we conclude that the trier of fact's determination is clearly wrong. See *Woodmen of the World Life Ins. Soc. v. Yelich*, 250 Neb. 345, 549 N.W.2d 172 (1996).

In part B(3), the determination of the trier of fact concerning that portion of the test in *Miller v. California*, 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973), as to whether the

work taken as a whole lacks serious literary, artistic, political, or scientific value, is weighed independently by this court after a de novo review of the relevant evidence. *State v. Harrold, supra.* In *Smith v. United States*, 431 U.S. 291, 97 S. Ct. 1756, 52 L. Ed. 2d 324 (1977), the U.S. Supreme Court noted that this portion of the *Miller* test is more susceptible to appellate review, for the "value" of a work is not determined by reference to contemporary community standards. See *Pope v. Illinois*, 481 U.S. 497, 107 S. Ct. 1918, 95 L. Ed. 2d 439 (1987). Since the appellate court possesses expertise and authority on this issue that is at least equal to those of the trier of fact, we need not give deference to the conclusions of the trier of fact on this question. Thus, the "value" of the work, part B(3), is weighed independently after a de novo review of the relevant evidence. *State v. Harrold, supra.*

Under part A of our analysis, we conclude as a matter of law that the movies in question depict or describe the types of sexual conduct that may be regulated as delineated in *Miller v. California, supra,* and § 28-807(15). The movies received in evidence by the district court involve actual or simulated sexual acts which depict or describe sexual conduct including, but not limited to, sodomy, masturbation, and sexual intercourse, which the trier of fact could find to be obscene.

We next proceed with part B. We first address part B(3), since that is the order in which the trial court considered the material. The district court determined that exhibit 9, "Takin' It to the Jury," has serious literary or artistic value and that exhibit 46, "Deep Throat III," has "serious value" and, therefore, found as a matter of law that these movies are not obscene. "Takin' It to the Jury" depicts the deliberation of a six-person jury in an obscenity case. The jurors discuss the community-standard requirements, and when they discuss specific scenes of the movie that they are reviewing for obscenity, various jurors fantasize about themselves in similar scenes.

Based on our de novo review of part B(3), we conclude that the State did not prove beyond a reasonable doubt that "Takin' It to the Jury" lacked any serious literary, artistic, political, or scientific value. The movie appears to be an attempt by the producers to instruct viewers in the basics of obscenity law with political commentary regarding the lack of validity and useful-

ness of obscenity laws. Therefore, we affirm the determination made by the district court under part B(3) as to exhibit 9.

"Deep Throat III" depicts a young woman who, upon having her first sexual encounter, discovers that her throat swells when she is sexually aroused. Seeking medical attention, she is told that she has a tumor on her larynx. It is later discovered that she is the daughter of the erotic film actress who starred in the movie entitled "Deep Throat" and that she has inherited her mother's abnormality—a clitoris in her throat. Based upon our de novo review, in which we independently weigh the relevant evidence, we conclude the district court erred in finding that exhibit 46 has serious literary, artistic, political, or scientific value. Although the movie contains a story line, we cannot conclude that the movie has any value. Nor are we persuaded by the fact that the State's expert witness testified that the movie has some serious literary or artistic value. The State's witness' testimony was equivocal.

However, our conclusion that this movie does not have serious literary, artistic, political, or scientific value does not result in a determination that the movie is obscene. Instead, we note that the district court found that the State had not proved beyond a reasonable doubt that exhibit 46 is obscene. All three prongs of the *Miller* test, which we have designated as part B(1), (2), and (3), must be proved beyond a reasonable doubt before a movie is considered obscene. *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999).

The district court found that the State had failed to prove beyond a reasonable doubt that exhibits 6, 7, 8, 9, 11, 12, 13, 15, 16, 17, 34, 35, 36, 37, and 46 are obscene. In its order, the district court, as the trier of fact, considered each of the movies presented. The court found that each movie submitted as evidence was segmented into five or six parts or vignettes. Each part or vignette contained scenes involving one or more of the following sexual activities: sexual intercourse, masturbation, lesbianism, cunnilingus, and fellatio.

The court found that

the existing contemporary community standard in Sarpy County permits the presence of sexually explicit films for sale or rent by the plaintiffs on the following conditions:

(1) The films do not depict violence in sexual relations; (2) The films do not depict sexual relations with children or family members; (3) The films do not depict sexual relations with animals; (4) The films are not available to minors; and (5) The films are not displayed in a manner or place where they might be viewed, in whole or in part, by non-consenting adults.

The trial court then described the movies as containing " '[u]nbridled sex, the eager, unabashed, no-holds-barred doing of raw sex — oral, manual, vaginal, anal, heterosexual, and homosexual — in multiple positions and worrisome repetition. It is a crude expression of a primitive passion, exaggerated by patently offensive full-screen close-ups of the sex parts in action.' " After describing the movies in this manner, the court stated:

> There are individual scenes in practically every film that can be described as troublesome, offensive, disgusting, and pornographic; but, in determining whether they are obscene, each film must be considered as a whole, and, in doing so, I conclude that [the appropriate] description of the scenes [is] "ridiculous" or "silly" . . . .

We are not sure whether the trial court, in relying upon the contemporary community standard which it found to exist in Sarpy County, applied this standard to the prurient interest, part B(1), or the patently offensive, part B(2), of the *Miller* test. Both parties argued at oral arguments that the trial court's finding was in regard to the prurient interest portion of the test. However, what is relevant is that applying the contemporary community standard, the court found that the State failed to prove beyond a reasonable doubt that the films are obscene.

██ We give due deference to the trier of fact's findings in relation to part B(1) and (2), and we will reverse such findings only if they are clearly wrong. See *State v. Harrold, supra.* The district court, acting as the trier of fact, determined that the contemporary community standard accepts sexually explicit movies as long as those movies do not depict violence; sexual relations with children, family members, or animals; are not available to minors; and are displayed in such a manner that they are visible only to consenting adults. The court's findings relating to the

exposure of minors to sexually explicit movies and the manner in which these movies are displayed reflect the community's preference about accessibility of sexually explicit materials, but are not determinative of whether a given work is obscene.

Although in *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999), we affirmed the trier of fact's finding that the visual depiction of a man masturbating appealed to the prurient interest, we do not compare that finding to the finding by the trier of fact in this case. Contemporary community standards must be applied by juries in accordance with their own understanding of the tolerance of the average person in their community. It is not simply the jurors' own subjective reaction to the material or conduct depicted. See *Smith v. United States*, 431 U.S. 291, 97 S. Ct. 1756, 52 L. Ed. 2d 324 (1977). The trier of fact is obviously better suited to determine the limits of tolerance in a particular community regarding the prurient interest test, and for this reason, we give due deference to the trier of fact. *State v. Harrold, supra.*

Consistency in jury verdicts as to the obscenity of identical materials is not constitutionally required. *Miller v. California*, 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973). The same is true of verdicts as to separate materials, regardless of their similarities. *Hamling v. United States*, 418 U.S. 87, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974). A fact finder in obscenity cases is permitted to draw on knowledge of the community or vicinage from which he or she comes in deciding what conclusion " 'the average person, applying contemporary community standards,' " could reach in a given case. *Hamling v. United States*, 418 U.S. at 104. Based upon this standard, we cannot say the court, as the trier of fact, was clearly wrong.

The district court did find exhibits 14 and 44 to be obscene. Exhibits 14 and 44 portray sexual relations between family members and combine violence with sex. The court found that such behaviors offended the contemporary community standard which the trier of fact found to exist in Sarpy County. No cross-appeal was filed, and therefore, any alleged error regarding exhibits 14 and 44 is not properly before this court.

Finally, the State argues that the district court erred in considering comparable evidence. Specifically, the State argues that the court erred in admitting exhibits 18 through 23. The State

contends that the fact that sexually explicit material is available in other places does not prove that those materials comply with contemporary community standards.

At trial, Main Street proffered several items obtained from other adult-oriented stores in the state. Exhibit 18 is a large box filled with sexual paraphernalia. Exhibit 19 is a movie entitled "Colossal Combos," which advertises that it contains 48 sexual scenes. The case that holds this movie displays several still photographs of explicit sexual scenes. Exhibit 20 is a movie with a case which has numerous photographs of sexual scenes. Exhibits 21, 22, and 23 are movies which have cases with dozens of photographs of men ejaculating on women. When they were offered, the State objected to these exhibits on the ground of relevancy, and the district court took the matter under advisement. The court overruled the relevancy objection and admitted the exhibits for a limited purpose.

To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded. *Radecki v. Mutual of Omaha Ins. Co.*, 255 Neb. 224, 583 N.W.2d 320 (1998). We conclude that the admission of exhibits 18 through 23 was error. In its order, the district court noted that the exhibits were received not as evidence of the contemporary community standard, but as evidence of material that was not acceptable under the community standard of Sarpy County. An exhibit of comparable materials is not in and of itself admissible to demonstrate contemporary community standards regarding the material at issue. Availability of similar material by itself means nothing more than that other persons are engaged in similar activities. *Hamling v. United States*, 418 U.S. 87, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974). We conclude, however, that the error in admitting this evidence was harmless.

Having considered the State's assignments of error and finding that they have no merit, we affirm the judgment of the district court as modified.

AFFIRMED AS MODIFIED.

CONNOLLY, J., dissenting.

I disagree with the majority's conclusion that the trial court was not clearly wrong in finding that an average person, apply-

ing contemporary community standards, would find exhibits 6, 7, 8, 9, 11, 12, and 13 did not appeal to the prurient interest. The trial court found the above exhibits involved the visual depiction of heterosexual and homosexual cunnilingus, fellatio, masturbation, and anal and vaginal intercourse, "[a]ll, or nearly all, of [which] culminate with the male(s) involved ejaculating, usually on the pubic or facial area of the female(s) involved."

I recognize that when reviewing a finding concerning "prurient interest," an appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence; an appellate court will substitute its findings for that of the trier of fact only if the appellate court concludes that the trier of fact's determination is clearly wrong. *State v. Harrold,* 256 Neb. 829, 593 N.W.2d 299 (1999). However, there are no conflicts in the evidence or any doubt as to the credibility of the essential witnesses in the instant case. The exhibits themselves are the best "witnesses" of their content. See *Paris Adult Theatre I. v. Slaton,* 413 U.S. 49, 93 S. Ct. 2628, 37 L. Ed. 2d 446 (1973). Thus, in determining whether the trier of fact was clearly wrong, the only question is whether an average person applying contemporary community standards could find that these exhibits, taken as a whole, do not appeal to the prurient interest. To decide this question, the trier of fact must look at each exhibit as a whole and determine whether its dominant theme is one which goes substantially beyond customary limits of candor in appealing to a shameful or morbid interest in sex. *State v. Harrold, supra.*

Having reviewed the exhibits at issue, it is my opinion that the trier of facts' finding in the instant case was clearly wrong. I do not think the clearly wrong standard of review means that " 'juries have unbridled discretion in determining' " whether certain speech appeals to the prurient interest. *State v. Harrold,* 256 Neb. at 840, 593 N.W.2d at 310, quoting *Jenkins v. Georgia,* 418 U.S. 153, 94 S. Ct. 2750, 41 L. Ed. 2d 642 (1974). As we stated in *State v. Harrold, supra,* an appellate court must make an independent review of the finder of facts' determination concerning prurient interest, the issue being whether the materials create an issue of fact as to obscenity. As in any other context, the trier of fact must make a finding that is supported by the evidence.

572

In *State v. Harrold, supra*, this court held that the trier of facts' finding that the visual depiction of a man masturbating appealed to the prurient interest was not clearly wrong. In the instant case, the majority again concludes that the findings of "fact" were not clearly wrong, even though the visual depictions of sex at issue herein are, without a doubt, more shameful and morbid than that in *Harrold*. I think the majority's holding in the instant case sets the standard so low as to make this court's appellate review of findings of "fact" in this context meaningless. If the exhibits in the instant case do not go substantially beyond customary limits of candor in appealing to a shameful or morbid interest in sex (prurient interest), I have difficulty imagining what does. It is difficult, in the instant case, to accept a result that renders the graphic depiction of men ejaculating on the faces of women, among other things, as being protected by the First Amendment; and yet *State v. Harrold, supra*, renders a depiction of male masturbation without ejaculation obscene and not protected by the First Amendment. Finders of "fact" are not given this type of latitude in any other context, and I see no reason to give them such latitude in this one.

I conclude that exhibits 6, 7, 8, 9, 11, 12, 13, 15, 16, 17, 34, 35, 36, 37, and 46 can be found only to appeal to the prurient interest and that the trial court's conclusion to the contrary was clearly wrong. However, because the trial court made no findings as to whether the above exhibits were patently offensive or, with the exception of exhibits 9 and 46, whether the above exhibits have some serious value, I would remand with directions for the trial court to make such findings.

McCORMACK, J., joins in this dissent.