STATE OF NEBRASKA, APPELLEE, V.
JOHN V. HALTOM, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V.
DANIEL C. BACON, APPELLANT.
642 N.W.2d 807

Filed April 25, 2002.   Nos. S-01-485, S-01-486.

Andrew M. Ferguson and Joseph M. Acierno, of Ferguson, Chesterman & Acierno, P.C., and John Fahle, of Carter & Fahle, for appellants.

Don Stenberg, Attorney General, and J. Kirk Brown for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

John V. Haltom and Daniel C. Bacon (collectively the appellants) appeal from orders of the district court affirming their convictions and sentences in county court for preparing, distributing, or promoting obscene literature or material. The two cases were consolidated for appeal. The materials at issue are two videos depicting a variety of sexual acts.

The appellants contend that the county court erred in its instruction on the elements of the offense and in the definition of "prurient interest." We reverse, and remand for a new trial because

the jury was improperly instructed that "prurient" was defined as "a tendency to excite lustful thoughts."

## BACKGROUND

Haltom is the owner of Dr. John's Lingerie and Novelty Boutique in Omaha, Nebraska. Bacon is an employee of the store. According to Haltom, the store carries a variety of merchandise including lingerie, swim wear, stockings, vibrators, rubber goods, dildos, gag gifts, and adult videos and literature. Adult videos make up approximately 15 percent of the inventory.

Two videos are the subject of this appeal. The first video was sold on January 23, 2000, and is the subject of a count against Haltom. The video, entitled "Sex Patrol," consists of nine scenes. The video has some dialog, although most of the dialog refers to sexual situations. The video depicts a variety of sex acts, including intercourse in a variety of positions and oral sex. Some of these scenes involve one woman engaging in sex acts with two men. The video also depicts various sex acts between two women and a man. The video shows ejaculation and includes a very brief depiction of spanking. The video contains several scenes involving a woman masturbating, one of which includes the use of a very large replica of a male penis. In addition, the video includes three scenes involving anal sex, including a scene in which two males simultaneously penetrate a woman, one vaginally, and the other anally.

The second video was sold on January 24, 2000, and is the subject of one count against Bacon and an additional count against Haltom. The video, entitled "Bleached Banged Blondes," consists of an advertisement for a telephone hotline, a warning that the tape contains sexual highlights and is for adults only, and nine scenes of sexual content. The video contains little dialog and nearly all of the dialog is sexual in nature. The video depicts a variety of sex acts, including intercourse in a variety of positions, oral sex, and penile-breast sex. The video also shows ejaculation and contains a scene that includes spanking. One scene depicts two women engaging in oral sex while a man watches. The man mentions on at least two occasions that the women are sisters and later joins the women in various sexual acts. The boxes containing each video portray photographs of sexual intercourse.

Omaha police officer Karen McArdle testified that in December 1999 and January 2000, she went to Haltom's store on several occasions as part of an undercover investigation. During the investigation, McArdle went to the store to arrest Haltom on five counts of distributing obscene materials that are not the subject of this appeal. During the arrest, McArdle identified herself as a police officer and spoke with Haltom after first advising him of his *Miranda* rights. She testified that Haltom told her that he had owned similar stores in Missouri and that he had previously been arrested there for distributing obscene material. The appellants initially objected to this testimony as part of a motion in limine before trial, but did not renew their objection to the testimony at trial.

McArdle testified that on January 24, 2000, she again went to the store with another officer. The officers spoke to Haltom about the purchase of a video. Bacon also assisted the officers in choosing a video. The officers purchased the video entitled "Bleached Banged Blondes." Bacon rang up the sale and gave the officers a receipt. McArdle stated that she did not know if either of the appellants had ever viewed the video.

Ronald B. Cole, a sergeant with the Omaha Police Department, testified that he conducted an undercover investigation of the store in December 1999. As part of the investigation, he spoke with Bacon. Cole testified that Bacon stated that he had watched some of the videos in the store and that he was aware that the videos depicted sexual intercourse. On January 23, 2000, Cole purchased the video entitled "Sex Patrol." Neither Haltom nor Bacon sold the video to Cole. Instead, the sale was made by another person. Cole admitted that he did not know if either Haltom or Bacon had ever viewed the video. At the end of the State's case, the appellants moved to dismiss. The motion was overruled.

Haltom testified that his store is strictly oriented to heterosexual couples. He stated that he does not carry videos depicting male-on-male sexual contact, sex with animals, sex with children, or violence. He testified that he had no reason to believe that any of the videos he received from his distributor were obscene.

Haltom testified that he has viewed a few of the videos that he sells. He stated that he had not viewed either of the two videos before they were sold to the officers. To Haltom's knowledge,

Bacon also had not previously viewed the videos. He stated that he and Bacon did watch the videos before trial. He testified that in his opinion, both videos were regular, standard adult videos. Haltom testified that he had been arrested five times in Missouri for selling obscene material, but was never convicted. Bacon did not testify.

The jury was instructed that the elements of the crime were that the defendants "did knowingly publish, circulate, sell, rent, lend, transport in interstate commerce, distribute, or exhibit any obscene material; or had in his or her possession with intent to sell, rent, lend, transport, or distribute any obscene material." The jury was further instructed:

> "**Knowingly**" shall mean having general knowledge of, reason to know, or a belief or reasonable ground for belief which warrants further inspection or inquiry of the character and content of any material, taken as a whole, described in this section, which is reasonably susceptible to examination by the defendant.

The appellants objected to the instruction because it did not set out each element separately and would be confusing to the jury. The appellants also offered an alternate instruction on the elements of the offense.

The jury was instructed on the definition of obscene in instruction No. 6 as follows:

> "**Obscene**" shall mean (a) that an average person applying contemporary community standards would find that the work, material, conduct, or live performance taken as a whole predominantly appeals to the prurient interest or a shameful or morbid interest in nudity, sex, or excretion, (b) the work, material, conduct, or live performance depicts or describes in a patently offensive way sexual conduct . . . and (c) the work conduct, material, or live performance taken as a whole lacks serious literary, artistic, political, or scientific value.

In a separate instruction, No. 8, the jury was instructed that " '[p]rurient' means material having a tendency to excite lustful thoughts."

The appellants objected to the instructions, contending that prurient was correctly defined in instruction No. 6 as a shameful

or morbid interest in nudity, sex, or excretion, but incorrectly defined in instruction No. 8. The appellants argued that the term "prurient" could not be defined only in terms of lust and that the combination of instructions would confuse the jury about the correct definition of the term. The appellants offered alternate instructions on the definition of prurient interest.

The jury found Bacon guilty of one count of preparing, distributing, or promoting obscene literature or material and found Haltom guilty of two counts of the same charge. Following the verdict, the appellants moved for judgment notwithstanding the verdict. The court overruled the motion, and the appellants filed a motion for a new trial, which was also overruled. On appeal, the district court affirmed.

## ASSIGNMENTS OF ERROR

The appellants assign that the district court erred in (1) instructing the jury that "prurient" means material having a tendency to excite lustful thoughts, (2) failing to instruct the jury that knowledge of the character or content of the material is an element of the crime, (3) allowing evidence of prior bad acts, (4) failing to grant their motions for judgment notwithstanding the verdict and new trial because there was insufficient evidence to convict them, and (5) failing to provide a complete and accurate record of the proceedings.

## STANDARD OF REVIEW

In reviewing a fact finder's determination that certain material is obscene, the threshold duty of an appellate court is to conduct an independent review and determine, as a matter of constitutional law, if the material falls within the substantive limitations set forth in *Miller v. California*, 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973), i.e., is the material the type of "hardcore" sexual material that may be constitutionally regulated under the First Amendment. Thereafter, the appellate court must review the determinations of the trier of fact under the three-part obscenity standard set forth in *Miller v. California, supra*, and Neb. Rev. Stat. § 28-807(10) (Reissue 1995). In doing so, the appellate court should give appropriate deference to the trier of fact regarding the first two prongs of the test, i.e., the "prurient interest" test and the "patently offensive" test, as these issues depend on knowledge of

contemporary community standards which are uniquely within the province of the trier of fact. *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999).

The appellate court should apply a de novo review in considering the third prong of the *Miller v. California* test, i.e., the "value" of the material at issue, since this determination does not depend upon community standards and is particularly amenable to appellate review. *Id.*

## ANALYSIS

The appellants contend that the district court erred when instructing the jury. They further contend that no reasonable jury could have found the videos to be obscene. We begin our review with some familiar principles concerning the regulation of obscenity.

### DEFINITION AND REGULATION OF OBSCENITY

Obscenity is not constitutionally protected speech and can be prohibited or otherwise regulated without violating the prohibitions of the First Amendment to the U.S. Constitution. *Roth v. United States*, 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957); *State v. Harrold, supra.* The U.S. Supreme Court has limited the definition of obscenity to those materials which, "taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." *Miller v. California*, 413 U.S. at 24. Material that provokes only normal, healthy sexual desires is not intended to be characterized as obscene. *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 105 S. Ct. 2794, 86 L. Ed. 2d 394 (1985).

Neb. Rev. Stat. § 28-813 (Reissue 1995) provides in part:

(1) It shall be unlawful for a person knowingly to (a) print, copy, manufacture, prepare, produce, or reproduce obscene material for the purpose of sale or distribution, (b) publish, circulate, sell, rent, lend, transport in interstate commerce, distribute, or exhibit any obscene material, (c) have in his or her possession with intent to sell, rent, lend, transport, or distribute any obscene material, or (d) promote any obscene material or performance.

"Material" for purposes of § 28-813 includes any "motion picture . . . television production, other pictorial representation or electric reproduction." § 28-807(7). "Obscene" is defined in § 28-807(10) as follows:

> Obscene shall mean (a) that an average person applying contemporary community standards would find that the work, material, conduct, or live performance taken as a whole predominantly appeals to the prurient interest or a shameful or morbid interest in nudity, sex, or excretion, (b) the work, material, conduct, or live performance depicts or describes in a patently offensive way sexual conduct specifically set out in sections 28-807 to 28-829, and (c) the work, conduct, material, or live performance taken as a whole lacks serious literary, artistic, political, or scientific value.

### PRURIENT INTEREST INSTRUCTION

The appellants contend that the trial court improperly instructed the jury on the definition of the term "prurient." They argue that by instructing the jury that prurient means material having a tendency to excite lustful thoughts, they could be found guilty even if the jury determined that the videos appealed to only a normal interest in sex. At trial, the State argued that the definition was approved by the U.S. Supreme Court in *Roth v. United States, supra.*

Whether jury instructions given by a trial court are correct is a question of law. *State v. Bao, ante* p. 439, 640 N.W.2d 405 (2002). When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *Id.*

In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Id.*

The statutes regulating obscenity do not specifically define the term "prurient." But, § 28-807(10) defines obscene as including material that "predominately appeals to the prurient interest or a shameful or morbid interest in nudity, sex, or excretion." See, also, Neb. Rev. Stat. § 28-814(2) (Reissue 1995) (requiring jury instruction using similar language).

The U.S. Supreme Court has deferred to the decision of a federal circuit court of appeals that a statute could not constitutionally define "prurient" solely in terms of "lust." *J-R Distributors, Inc. v. Eikenberry*, 725 F.2d 482 (9th Cir. 1984), *reversed on other grounds, Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 105 S. Ct. 2794, 86 L. Ed. 2d 394 (1985).

In *Eikenberry*, the Ninth Circuit noted that the U.S. Supreme Court first attempted to define "prurient" in 1957 in *Roth v. United States*, 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957). The Ninth Circuit recognized that the Court in *Roth* initially stated in a footnote that " 'material having a tendency to excite lustful thoughts' was an example of material 'appealing to prurient interest.' " *Eikenberry*, 725 F.2d at 490, quoting *Roth v. United States, supra*. But, the court in *Eikenberry* noted that *Roth* then "referred to the Webster's New International Dictionary (Unabridged, 2d ed., 1949), which defined 'prurient' as '[i]tching; longing; uneasy with desire or longing; of persons, having itching, morbid, or lascivious longings; of desire, curiosity, or propensity, lewd.'" *Eikenberry*, 725 F.2d at 490. The *Eikenberry* court quoted *Roth* which ultimately concluded that there was " 'no significant difference between the meaning of obscenity developed in the case law and the definition of the A.L.I., Model Penal Code, § 207.10(2) (Tent. Draft No. 6, 1957).'" That section of the Model Penal Code defined an item as obscene " 'if, considered as a whole, its predominant appeal is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion.'" *Eikenberry*, 725 F.2d at 490. Thus, the *Eikenberry* court concluded that the U.S. Supreme Court did not intend in *Roth* to equate "lust" with "prurient interest."

The *Eikenberry* court also concluded that even if "lust" could be equated with "prurient interest" in 1957, the meaning of the term "lust" is interpreted differently today. The court stated:

> [W]e also recognize that the meaning of words changes as a result of contemporary usage. Obscenity jurisprudence— based as it has been on contemporary community standards and changing social mores—is an extremely fluid area of law. . . . The connotations that accompanied the word "lust" in 1957, when *Roth* was decided, are not necessarily the same ones that attach to the word today. For example, the

most recent edition of Webster's New International Dictionary (Unabridged, 3d ed., 1976) no longer includes the word "lust" in its definition of "prurient."

725 F.2d at 490.

The *Eikenberry* court further noted that the U.S. Supreme Court's 1973 decision in *Miller v. California*, 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973), made no reference to the term "lust" and relied solely on the definition of obscenity offered in the A.L.I.'s 1962 Official Draft of the Model Penal Code. The court further stated:

> Indeed, to permit expression that merely excites "lust" to be regulated by the state would destroy the boundaries between protected and unprotected speech. To the contemporary jury, "lust" is unlikely to connote anything more than "sexual desire." *Websters Third New International Dictionary* (Unabridged 3d ed., 1976) . . . ("lust" defined as "sexual desire or appetite"). . . . Expression that may merely stimulate sexual longing or desire is entitled to the full range of first amendment protections and cannot constitutionally be branded as obscene.

725 F.2d at 491. The court then held that a statute defining "prurient interest" using the term "lust" was unconstitutional. On appeal, the U.S. Supreme Court did not decide the proper definition of the term "prurient" and instead deferred to the conclusion of the Ninth Circuit. The Court reversed to the extent that the Ninth Circuit had invalidated the entire statute at issue when the statute had a severability clause. *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 105 S. Ct. 2794, 86 L. Ed. 2d 394 (1985).

Several other courts have similarly concluded that "prurient interest" cannot be defined solely in terms of "lust." See *State v. LeBlang*, 530 So. 2d 601 (La. App. 1988) (error to include lust in jury instruction defining "prurient interest"). See, generally, *Little Store, Inc. v. State*, 295 Md. 158, 453 A.2d 1215 (1983).

Although we have not directly addressed the proper definition of the term "prurient," we have stated that a jury was properly instructed when given the following instruction:

> "You must determine whether the material appeals to a prurient interest in sex, for unless it does it cannot be obscene. A prurient interest in sex is not the same as a

candid, wholesome, or healthy interest in sex. Material does not appeal to the prurient interest just because it deals with sex, or shows nude bodies. Prurient interest is a shameful or morbid interest in sex, nudity or excretion which goes beyond the customary limits of candor."

*State v. Harrold*, 256 Neb. 829, 846, 593 N.W.2d 299, 313-14 (1999). We further stated that this definition was taken directly from *Roth v. United States*, 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957), and remains an accurate description of the definition under *Brockett v. Spokane Arcades, Inc., supra.*

██ We find the reasoning of the Ninth Circuit in *J-R Distributers, Inc. v. Eikenberry*, 725 F.2d 482 (9th Cir. 1984), *reversed on other grounds, Brockett v. Spokane Arcades, Inc., supra*, persuasive. We do not read *Roth* to define "prurient" as a "tendency to excite lustful thoughts." Instead, *Roth* defined "prurient" in the same manner as it is used in § 28-807(10). Under § 28-807(10), obscene material "predominately appeals to the prurient interest or a shameful or morbid interest in nudity, sex, or excretion." We further agree that by defining "prurient" as "a tendency to excite lustful thoughts," the jury could impermissibly determine that material which provokes normal, healthy sexual desires is obscene.

Here, the jury was initially instructed in part that "obscene" material predominantly appeals to the prurient interest or a shameful or morbid interest in nudity, sex, or excretion. But later, in instruction No. 8, the jury was specifically told that "prurient" means "material having a tendency to excite lustful thoughts." We conclude that this definition was in error.

The State argues that when the instructions are read as a whole, there is no error. We note, however, that the court did not instruct the jury that it could not find material obscene if the material provokes normal, healthy sexual desires. When the improper definition of prurient is combined with the statutory definition, the jury still could have found the appellants guilty even if they believed the videos did provoke normal, healthy sexual desires. We determine that the jury was improperly instructed regarding the definition of the term "prurient" and that the appellants were prejudiced by the error. Accordingly, we reverse.

## SUFFICIENCY OF EVIDENCE

■ Upon finding error in a criminal trial, the reviewing court must determine whether the evidence presented by the State was sufficient to sustain the conviction before the cause is remanded for a new trial. *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000). The Double Jeopardy Clause does not forbid retrial if the sum of the evidence offered by the State and admitted by the trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict. *State v. Sheets*, 260 Neb. 325, 618 N.W.2d 117 (2000), citing *Lockhart v. Nelson*, 488 U.S. 33, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988). It would unduly lengthen this opinion to again detail the facts. We have reviewed the record and viewed the videos, and we determine that there was sufficient evidence to sustain the guilty verdicts. Because of our ruling, we do not address the appellants' other assignments of error.

## CONCLUSION

We conclude that the county court improperly instructed the jury regarding the definition of the term "prurient." The appellants were prejudiced by the erroneous instruction. Accordingly, we reverse, and remand for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.