STATE OF NEBRASKA, APPELLEE, V.
JOHN V. HALTOM, APPELLANT.
653 N.W.2d 232

Filed November 22, 2002.   No. S-01-1400.

Andrew M. Ferguson and Joseph M. Acierno, of Ferguson, Chesterman & Acierno, P.C., and John Fahle, of Carter & Fahle, for appellant.

Don Stenberg, Attorney General, and J. Kirk Brown for appellee.

Hendry, C.J., Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Connolly, J.

John V. Haltom appeals the district court's order affirming his conviction and sentence in county court for distributing obscene material. The county court sentenced Haltom to 9 months in jail. At issue is a video depicting a variety of sexual acts. Haltom contends that the county court erred in various respects, including failing to suppress statements and failing to grant a mistrial. He also contends that the trial court erred by instructing the jury

that "prurient" means a tendency to excite lustful ideas or desires, but that lustful desires do not include a normal interest in sex. We affirm.

## BACKGROUND

Haltom owns a store known as Dr. John's Lingerie and Novelty Boutique in Omaha, Nebraska. The store carries a variety of merchandise, including adult videos.

The video that is the subject of this appeal was sold on February 6, 2000. The video, entitled "Snatch Patch," features a variety of heterosexual sex acts, including intercourse in a variety of positions, oral-vaginal sex, and oral-penile sex. Some of these scenes involve one woman engaging in sex acts with two men. The video shows ejaculation and spanking. In addition, the video includes scenes involving penile-rectal sex, including a scene in which two males simultaneously penetrate a woman, one vaginally, and the other rectally.

Before trial, the court held a hearing on a motion to suppress statements. Several Omaha police officers testified concerning the day Haltom was arrested. According to the officers, they advised Haltom of his *Miranda* rights. The officers stated that Haltom then told them that he had previous arrests, that he had been in business in other states, and that he was the owner of the store. The officers gave Haltom a citation, but he was not taken to the police station. According to Haltom, the officers did not advise him of his *Miranda* rights before he made the statements and the officers told him that if he cooperated, they would not take him down to the station and book him. The trial court denied the motion to suppress. At trial, Haltom did not object to testimony about his statement that he was the owner of the store.

Haltom also moved to exclude evidence of his prior arrests. During a hearing on the motion, the State agreed not to discuss prior arrests or convictions. At trial, however, Ronald Cole, a sergeant with the Omaha Police Department, was asked about conversations he had had with Haltom. Cole testified: "He stated he was the owner of the establishment. He referenced that he owned a place like this in St. Louis, that he's been arrested several times there." Haltom objected, and the court told the jury to disregard the testimony. Haltom then moved for a mistrial. The

motion was overruled. The record shows that the jury was not given any additional instruction to prevent drawing further attention to the testimony.

The video was played for the jury, and the State rested. Haltom moved for a directed verdict, which was denied.

Haltom presented witnesses who testified about the community standards in Omaha. They expressed opinions that the video was not obscene. Haltom also gave his opinion of the community standards. He testified that his store is oriented to heterosexual adults and that he had not watched the video before trial. He stated that it was a "regular adult video" and that he had sold those types of videos across the country. According to Haltom, most of the videos in his store would portray depictions similar to those in the video.

Before trial, Haltom discussed with the court his intention to offer evidence of comparable materials to show community standards. He mentioned a previous judgment that found him not guilty in an obscenity case in Omaha. The court stated that it would not allow any evidence of comparable materials. At trial, Haltom made an offer of proof for a video of a movie available on pay-per-view at a local hotel. According to Haltom, the content of the movie is comparable to the content of the video. He also offered two videos that were available at another store. The court did not allow any of the videos into evidence. During the offer of proof, there was no discussion of videos that were the subject of a not guilty verdict determination in the other cases. The record contains two videos that bear exhibit stickers from a different proceeding. The videos do not have exhibit stickers indicating that they were marked as exhibits in this case.

The jury was instructed on the definition of "obscene" as follows:

> **"Obscene"** shall mean (a) that an average person applying contemporary community standards would find that the work, material, conduct, or live performance taken as a whole predominantly appeals to the prurient interest or a shameful or morbid interest in nudity, sex, or excretion, (b) the work, material, conduct, or live performance depicts or describes in a patently offensive way sexual conduct . . . and (c) the work conduct, material, or live performance

taken as a whole lacks serious literary, artistic, political, or scientific value.

In a separate instruction, the jury was instructed that " '[p]ruri-ent' means material having a tendency to excite lustful ideas or desires. However, lustful ideas or desires do not include a normal interest in sex."

Haltom initially proposed a different definition of "prurient" and objected to instructions offered by the State which defined "prurient" as "a tendency to excite lustful thoughts." The court discussed the definition of "prurient" with the attorneys. During the discussion, Haltom's attorney expressed concern that by defining "prurient" in terms of lust, the State was presenting an instruction that would allow a jury to convict even if the material appealed to a normal interest in sex. The court ultimately suggested that the definition be worded to include language about a normal interest in sex. When the court suggested the instruction that was given, Haltom's attorney stated that he thought the instruction was "as close as we can get to the exact words of the Supreme Court." The court then stated that it would give the instruction, and Haltom's attorney stated, "Great." There was no objection to the instruction.

The jury found Haltom guilty. Haltom moved for judgment notwithstanding the verdict. The court overruled the motion. The record does not reflect that a motion for a new trial was filed. The district court affirmed.

## ASSIGNMENTS OF ERROR

Haltom assigns that the county court erred in (1) its instruction to the jury on the definition of "prurient interest"; (2) overruling his motion for a mistrial when the jury heard evidence of prior bad acts; (3) refusing to allow evidence of comparable material; (4) denying his motion to suppress statements; and (5) failing to grant his motions to dismiss, for judgment notwithstanding the verdict, and for a new trial.

Haltom also assigned that the court erred by failing to instruct the jury that knowledge of the character or content of the material is an element of the crime. At oral argument, Haltom conceded that the assignment was without merit and withdrew it from consideration. We do not discuss that assignment of error.

## STANDARD OF REVIEW

█ The decision whether to grant a motion for mistrial is within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Jackson*, 258 Neb. 24, 601 N.W.2d 741 (1999); *State v. Larsen*, 255 Neb. 532, 586 N.W.2d 641 (1998).

█ In reviewing a fact finder's determination that certain material is obscene, the threshold duty of an appellate court is to conduct an independent review and determine, as a matter of constitutional law, if the material falls within the substantive limitations set forth in *Miller v. California*, 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973), i.e., is the material the type of "hardcore" sexual material that may be constitutionally regulated under the First Amendment. Thereafter, the appellate court must review the determinations of the trier of fact under the three-part obscenity standard set forth in *Miller v. California, supra*, and Neb. Rev. Stat. § 28-807(10) (Reissue 1995). In doing so, the appellate court should give appropriate deference to the trier of fact regarding the first two prongs of the test, i.e., the "prurient interest" test and the "patently offensive" test, as these issues depend on knowledge of contemporary community standards which are uniquely within the province of the trier of fact. *State v. Haltom*, 263 Neb. 767, 642 N.W.2d 807 (2002); *Tipp-It, Inc. v. Conboy*, 257 Neb. 219, 596 N.W.2d 304 (1999).

█ An appellate court should apply a de novo review in considering the third prong of the *Miller v. California* test, i.e., the "value" of the material at issue, since this determination does not depend upon community standards and is particularly amenable to appellate review. *Id*.

## ANALYSIS

### DEFINITION OF "PRURIENT"

Haltom contends that the trial court wrongly instructed the jury on the definition of "prurient" because the instruction states that prurient means a "tendency to excite lustful ideas or desires." The definition also states that lustful desires do not include a normal interest in sex. The State contends that the issue was waived. Haltom offered an alternate instruction, but he agreed to the instruction that was ultimately given without objection.

■ Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice. *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002); *State v. Owens*, 257 Neb. 832, 601 N.W.2d 231 (1999). We have held that the submission of proposed instructions by counsel does not relieve the parties in an instruction conference from calling the court's attention by objection to any perceived omission or misstatement in the instructions given by the court. *Haumont v. Alexander*, 190 Neb. 637, 211 N.W.2d 119 (1973). We explained that "[t]he purpose of the instruction conference is to give the trial court an opportunity to correct any errors being made by it. Consequently, the parties should object to any errors of commission or omission." *Id.* at 641, 211 N.W.2d at 122.

Here, Haltom's attorney submitted proposed instructions and then discussed at length with the court how the jury should be instructed about the definition of "prurient." He expressed concern that the instructions needed to inform the jury that "prurient" did not include a normal interest in sex. When the court agreed and suggested language about a normal interest in sex, Haltom's attorney stated that it was "as close as we can get to the exact words of the Supreme Court." When the court then stated that it would give the instruction, Haltom's attorney stated, "Great." The record shows that Haltom not only failed to object to the instruction that was given, but expressed satisfaction with it. We determine that the issue has been waived, and we do not find plain error.

## MOTION TO SUPPRESS STATEMENTS

Haltom contends that statements he made to the police officers were involuntary because the officers said they would not take him downtown and book him if he cooperated. Before trial, the court determined that the State could offer the statements into evidence. Haltom did not object when the statements were offered at trial.

■ In a criminal trial, after a pretrial hearing and order which overrules a defendant's motion to suppress his statement, the defendant must object at trial to the receipt of the statement to preserve the question for review on appeal. *State v. Cody*, 236

Neb. 69, 459 N.W.2d 195 (1990). This rule also applies to pre-trial determinations about the voluntariness of the statements. *Id.* Because Haltom did not object to the evidence when it was introduced at trial, he has not preserved the question for review and we do not consider it.

### COMPARABLE MATERIALS

Haltom contends that he was entitled to present the following comparable materials at trial: a pay-per-view video from a local hotel, two videos sold at another store, and videos from two other trials where he was found not guilty.

Haltom did not mark the two videos that were the subject of not guilty verdicts as exhibits and did not provide an offer of proof for them. Those videos were never offered into evidence, and we do not discuss them on appeal. We do discuss, however, the hotel video and the videos sold at another store.

■ In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *State v. Harris*, 263 Neb. 331, 640 N.W.2d 24 (2002). The exercise of judicial discretion is implicit in determinations of relevancy, and a trial court's decision regarding it will not be reversed absent an abuse of discretion. *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002). The determination of whether the evidence is relevant to show contemporary community standards is subject to an abuse of discretion standard of review.

■ We have stated that "[a]n exhibit of comparable materials is not in and of itself admissible to demonstrate contemporary community standards regarding the material at issue. Availability of similar material by itself means nothing more than that other persons are engaged in similar activities." *Main Street Movies v. Wellman*, 257 Neb. 559, 570, 598 N.W.2d 754, 763 (1999), citing *Hamling v. United States*, 418 U.S. 87, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974).

Here, the hotel video and the videos sold at another store demonstrate only that other videos are available in the community. This alone does not provide evidence that the videos would not be considered to be obscene in the community. We determine

that the trial court did not abuse its discretion by refusing to allow the videos into evidence.

### MOTION FOR MISTRIAL

Haltom contends that the court should have granted his motion for a mistrial when the jury heard that he had previously been arrested. The decision whether to grant a motion for mistrial is within the discretion of the trial court. See *State v. Jackson*, 258 Neb. 24, 601 N.W.2d 741 (1999).

Unlike cases where detailed evidence of prior bad acts have the potential to confuse the jury and prejudice it against the defendant, here the jury briefly heard only that Haltom said he had been arrested several times in Missouri. The jury did not hear any details about the arrests or hear whether he had been convicted. The jury was immediately told to disregard the testimony. No further instruction was given to avoid drawing attention to the matter. We determine that the trial court did not abuse its discretion in overruling the motion for a mistrial.

### MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT

Finally, Haltom contends that the court should have granted his motions to dismiss, for judgment notwithstanding the verdict, and for a new trial because no reasonable jury could find beyond a reasonable doubt that the video was obscene. We note that the record does not contain a motion for a new trial, and we do not address that issue. We have viewed the video and determine that under *Miller v. California*, 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973), this assignment of error is without merit.

### CONCLUSION

We determine that Haltom waived assignments of error concerning the definition of "prurient" and the denial of his motion to suppress statements. We determine that the trial court did not err by refusing evidence of comparable materials and by refusing to grant Haltom's motion for a mistrial. Finally, we determine that the trial court properly overruled Haltom's motion for judgment notwithstanding the verdict. Accordingly, we affirm.

AFFIRMED.